JOHN ROBBINS

*against*

STEPHEN WINDOVER and JOSEPH HOPKINS.

MOTION for new trial.

The defendant in the preceding cause moved for a new trial; stating,

First. That some of the Jurors of the Jury who tried the cause, after the cause was submitted to them, witnessed or related to others of the panel certain matters and things in relation to the issue not witnessed or related on the trial of the cause in Court.

Secondly. That since the trial of the cause he had discovered *new*, and as he is advised, material evidence.

In support of the first point,

*Chauncey Langdon*, for defendant, offered to read the affidavit of one of the Jurors.

To the reading of this affidavit an objection was taken.

*Langdon* cited 1 *Wils. Rep.* p. 329. *Rex* v. *Simmons*, a Jew; and 1 *Burr. Rep.* p. 383. *Cogan* v. *Ebden and another.*

*Darius Chipman*, for plaintiffs, read, *as advisory*, *Leib* v. *Bolton*, from *Dallas's Pennsylvania Reports.**

After hearing argument, the Court said they would take time to advise on this exception, and directed

When an action of fraud is brought against *A.*, and *B.* is coupled with him in the declaration as a particeps, it is not material to the general issue to show in defence that the plaintiff had no knowledge of the defendant, and was not *immediately* defrauded by him, and therefore the exhibition of such evidence by affidavit, though newly discovered, is no ground for a new trial.

On motion for a new trial in a *civil cause*, the affidavit of one of the panel who tried it cannot be read to show what passed in the jury room during the deliberations of the jury while agreeing to their verdict.

* This case may be found 2d edit. vol. 1. p. 82.

the defendant's counsel to proceed in support of his second cause for a new trial.

The counsel read the affidavit of *Paul Rogers*, upon which he principally relied, which testified, that some time after the institution of the suit of *Windover and Hopkins* v. *John Robbins*, and while the same was pending in the County Court, he was in the store of the plaintiffs in *New-York*, and heard them in conversation upon the subject of the suit, and either *Windover* or *Hopkins* said " they did expect to recover in the suit, although they did not deliver the goods upon the credit of *Robbins*, or upon any thing that *Robbins* had said or done within their knowledge; for they had delivered the goods to *Robinson* upon his credit only; but from information since the delivery of the goods, they hoped to be able to prove, that *Robbins* had some how or other been concerned with *Robinson* in partnership.

Upon the sixth day of the term,

TYLER, Assistant Judge, the Chief Judge being absent, delivered the opinion of the Court.

The defendant rests his motion on two grounds : The first is, that certain Jurors of the panel who tried the cause, witnessed or related certain matters and things in relation to the issue, to others of the panel after the cause was submitted to them, not witnessed on the trial of the cause in Court.

It may be observed here, that it is not alleged that these matters and things had any effect in determining the verdict; and the Court will not in any case set aside a verdict by intendment, where it appears that substantial justice has been done. But the previous question, whether the affidavit of one of the

Jurors shall be admitted to show what passed during the investigation of the cause in the jury room, renders any further observation upon what would have been the effect of such testimony if admitted, unnecessary.

Robbins
v.
Windover and
Hopkins.

Upon the point in question, the Court are decidedly of opinion, that the affidavit cannot be admitted to be read.

The common law requires, that the twelve Jurors shall unite in a verdict. Whoever considers the variety and intricacy of causes they have to determine, the difficulty of bringing twelve persons of different habits and modes of thinking, and of unequal abilities, fortuitously elected, to concur in opinion, will perceive the wisdom of the Legislature in directing that their deliberations should be secret; for it was to be expected, that in bringing about a union of sentiment in the panel, the subject under consideration would be presented in various lights; that futile objections would be met with inconclusive arguments, theory opposed to practice, and legal science to common sense; that the reputations of witnesses would be scanned, the character of parties too often adverted to, and the whole investigation illustrated by relations of what each Juror had heard or known in cases supposed similar; that the warmth of debate would excite an obstinacy of opinion, and a reluctant and tardy assent to the verdict, perhaps drawn from some one which, on after reflection, might leave in the Juror's mind a doubt of its rectitude.

It would be of dangerous tendency to admit Jurors by affidavit to detail these deliberations of the jury room, to testify to subjects not perfectly comprehended at the time, or but imperfectly recollected.

From a natural commiseration for the losing party, or a desire to apologize for the discharge of an ungrateful duty, after the Juror had been discharged from office, he would be too apt to intimate, that if some part of the testimony had been adverted to, or something not in evidence omitted, his opinion would have been otherwise, whilst others of the panel, with different impressions or different recollections, might testify favourably for the prevailing party. This would open a novel and alarming source of litigation, and it would be difficult to say when a suit was terminated.

The Court consider it to be far better to establish it as a general rule, that the affidavits of Jurors respecting the deliberations which led to their verdict, should in no civil cause be admitted; and they are confirmed in this opinion from the consideration of the provisions made by the Legislature to rectify improper verdicts.

If the verdict be contrary to law, the Court can grant a new trial.

If it is against evidence, the Court can send the Jury to a second and third consideration, stating the true points in the cause, detailing and applying the evidence, and affording them the light of their opinion which way the verdict ought to incline.

From the lower Courts an appeal lies. In this Court the cause may be reviewed where the verdict is not final; and when it is, the Court, in furtherance of justice, will be very liberal in granting new trials on application supported by *other testimony.*

We learn by the cases cited from the books, and from others within the recollection of the Court, that the *English* Judges consider the admission of

such affidavits as not common, and of dangerous tendency.

The case of *Simmons*, the Jew, cited from *Wilson's Reports*, shows the caution with which the Judges of the Court of King's Bench, admitted the affidavits of petit jurymen. The ground of setting aside the verdict was not the exposition by affidavit of any *improper deliberations of the Jury*, not upon the affidavits of the Jury only, but because it was a criminal case, and that the verdict taken in Court was a mis-entry, as appeared by the affidavit of the foreman and all his fellows, supported by the declaration of Judge *Foster*, who presided on the trial at *Nisi Prius*.

In delivering his opinion, *Lee*, Chief Justice, said, " There is no doubt but a new trial may be granted in a *criminal* case, and the true reason for granting new trials is for the obtaining of justice : but to grant them upon the affidavits of jurymen only, must be admitted to be of dangerous consequence. It appears from the *report* of my brother *Foster*, and the affidavit of *Dodson*.the foreman, that this verdict was taken by *mistake ;* for he swears that he declared in Court, " that they did not find the defendant guilty of any intent," and therefore this is not granting a new trial upon any AFTER-THOUGHT of the Jury, but upon what the foreman *Dodson* declared at the bar when they gave their verdict."

*Wright*, Justice, observed, " My brother *reports*, that he told them, if they did not believe the intent they must acquit him. The Jury now swear, " they did not hear him." Therefore I am of opinion that it is a verdict *mis-entered*, contrary to the declaration of the foreman, not contradicted by any of the rest

Robbins
v.
Windover and
Hopkins.

at the time it was spoken at the bar; and that it is most plainly no *after-thought;* so that we may keep clear of the danger of granting new trials merely upon the *affidavits of jurymen.*"

*Denniston,* Justice, added, " The Court will be very cautious how they grant new trials upon the affidavits of jurymen, because it would be of very dangerous tendency; but in this particular case, which *partly depends on my brother's report, and partly on the affidavits of all the jurymen,* I am very well satisfied, there ought to be a new trial, because it appears, both by the *report and affidavits,* that this verdict ought not to stand."

The case of *Cogan* v. *Ebden and another,* cited from *Burrow's Reports,* exhibits no decision.

It appeared, upon investigation, and recurrence to the reporting Judge's minutes, that there was a mistake, a mere slip in the verdict; and upon suggestion of Lord *Mansfield* to Mr. *Morton,* the plaintiff's counsel, he moved for a rule upon defendant to show cause why, upon reading the affidavits of eight of the jurymen, the verdict should not be amended and set right, according to the truth of the finding. The rule was granted, *but it never came before the Court any more.*

But whatever may have been the opinions of the *English* jurists on this point, the Court consider that the mode of our trials affords so many opportunities for a losing party to have his cause reconsidered by Court and Jury, unknown in the mother country, that the reasons operative there, if any exist, for the admission of affidavits of jurymen, exhibiting the deliberations of the jury room, cannot apply here.

The case of *Leib* v. *Bolton*, cited from *Dallas's* *Reports*, decided in the Common Pleas, *Philadelphia* County, *Pennsylvania*, under the Presidency of the late venerable and learned Chief Justice *Shippen*, though read as advisory, has weight. It shows a coincidence of opinion in the Judges of a State eminently respectable for its jurisprudence, administering a municipal code of near affinity with our own.

Robbins<br>v.<br>Windover and<br>Hopkins.

The affidavit of the jurymen cannot therefore be read in evidence, and consequently the defendant cannot rest on the first ground of his motion.

Any reliance upon the affidavits of *Abel Spencer* and *Joseph Randall* being abandoned by the defendant's counsel, it remains only to be considered whether the subject matter of the affidavit of *Paul Rogers* be a sufficient ground for a new trial.

In order to obtain a new trial upon the exhibition of further testimony,

First. The evidence must have been discovered by the party subsequent to the trial.

Secondly. It must be material to the issue tried.

The time this evidence came to the defendant's knowledge has not been made to appear; but this is of small import, as the Court consider the evidence exhibited in the affidavit as totally irrelevant and immaterial to the matter lately in issue. It only goes to show, that the plaintiffs had no knowledge of *Robbins* during the transaction by which they were defrauded, and were not induced by his personal application to part with their property on credit to the bankrupt, and that they relied upon maintaining their action lately tried.

That the defendant was to keep concealed both as to acts and words from the plaintiffs' knowledge,

appears to have been within the scheme and essence of the fraud.

On the trial, no reliance was had by the plaintiffs on any acts or speeches of the defendant, as applied immediately to them; but the fraud complained of, and the injury sustained, was *mediately* through *James Robinson.*

On the other hand, reliance was had by the defendant's counsel upon the circumstance, that as the plaintiffs, during the whole transaction, never had any view or even knowledge of the existence of the defendant, it could not be intended that they parted with their property through any reliance upon him. It was conceded by the plaintiffs that they had no such knowledge, and the defendant's counsel urged it in argument to the Jury.

As the Judge who charged the Jury expressed himself very fully upon this point, it was not apprehended that any further attempt would be made to attach this extraneous position to the cause. This repeated aberration in the counsel has manifestly arisen from confounding an action for fraud with an action upon a warranty. In the case of goods vended upon the express warranty of the ability of the purchaser by a third person, some privity of contract must be shown between the vendor and warrantor; but in cases of fraud it is not necessary to show any privity between the person defrauded and the principal in the fraud.

In this case *Robinson* was indebted to the plaintiffs, and was a bankrupt. He appeared at their store in a character every way the reverse. He was not only able to cancel their existing demand, but was able to deposit a considerable sum of money as prompt

and part payment for a new invoice of goods. The plaintiffs, deceived by his apparent opulence, gave him credit for merchandise to a large amount, which he eloigned. They have now discovered the person who furnished this bankrupt with the means of deception, and they have traced their eloigned goods into his possession. It was manifestly part of the fraudulent design of the defendant to keep out of view of the plaintiffs. He might know or apprehend that his appearance might defeat the plan, entangle him as a *particeps* or warrantor, or at least draw the attention of the plaintiffs to some clew by which they might discover the place where the spoil was to be divided. Shall the defendant now say to the plaintiffs, " I have defrauded you. I have your property in my possession. You have exposed my fraud to the satisfaction of both Court and Jury; but as part of my plan was to keep from your view and knowledge, if the Court will afford me an opportunity to show, upon a new trial, that I have, by your own confession, succeeded in this part of my fraudulent scheme, I shall escape with impunity." Surely such showing would be inadmissible.

The subject matter of the affidavit of *Paul Rogers* cannot therefore be considered as material to the issue; and the defendant cannot take any thing by his motion.

Motion dismissed, with costs.

*Langdon*, for defendant.
*Darius Chipman*, for plaintiffs.