[ * 530 ]     ➤

* WILLIAM GRINNELL *versus* THOMAS PHILLIPS.

Trespass, *vi et armis*, lies against a sheriff for the act of his deputy. New trial will be granted for gross misbehavior in the jury, and one of the jurors is a competent witness to prove the fact.

THIS was an action of trespass against the defendant, (who was sheriff of this county) for breaking and entering the plaintiff's sloop,

and taking and carrying away the cargo thereof, and converting the same to his own use, &c.

The defendant pleaded the general issue ; and gave notice that he should justify the supposed trespass, as sheriff of the county of *Hancock*, in the due execution of a writ of replevin in favor of *John Hunter* against the plaintiff, (bearing date, &c., and returnable to the Court of Common Pleas,) by *John Clarke*, then and now one of his deputies.

Upon the trial of this cause, at *July* term, 1804, the jury found the defendant guilty, and assessed damages at $71 76 cents. The verdict was taken subject to the opinion of the Court whether, upon the declaration in the plaintiff's writ, and the notice of justification by the defendant, the acts of *John Clarke*, a deputy of the defendant as sheriff as aforesaid, not especially known or consented to by him, are competent to be given in evidence against him, to maintain the issue for the plaintiff.

For the defendant it was said that *this* action would not lie against the sheriff for the act of his deputy, unless there had been some recognition of the act by the sheriff. 2 *Rol. Abr.* 552, *pl.* 9, 10. *Laicock's* case, *Latch,* 187 ; *Saunderson* vs. *Baker & Al.* 3 *Wils* 309 ; and that there had been no recognition in this case. But if it should be admitted that the action lay without such recognition, yet the declaration ought to have been special, it ought to have stated who was the deputy that did the act complained of as a trespass, that it might appear, by the record, for whose default or * misconduct the sheriff was sued, so that the [ * **531** ] sheriff might know against what he is to defend ; and also, in case of a recovery against him, that he might have his action over against his deputy. There is a difference between the office of sheriff in *England* and *here*. *There* the writ is directed to the sheriff only, and is of course always returned by him ; *here* it is directed to the sheriff and his deputies, and is returned by the deputy who serves it. It does not appear, from the report of any of the cases, where trespass has been brought against the sheriff, *there*, for the act of *his* deputy, whether the declaration was general, or stated the particular circumstances of the act complained of ; but even admitting that in those cases the declaration was general, the rule will not apply ; because *there* the sheriff must know what he has to defend ; for he makes a special warrant for each case ; *here*, the deputation being general, he cannot know what he is to answer to unless the declaration specifies.

The statute of Feb. 25, 1793, (*stat.* 1792, *c.* 41,) authorizing officers to plead the general issue, and to give the special matter in evidence, provides, " that in any action wherein the defence intend-

ed to be set up by the defendant is, that he was a sheriff, deputy sheriff, &c., and that the act for which *he* is sued, is an act or thing done by *him*, by virtue or in execution of his office, he may plead," &c. The statute supposes the act to have been done by the defendant, *personally*, as is obvious from the words, "an act done by *him*;" the deputy is named in the statute, and, to this purpose, is put on the same footing with the sheriff. But the statute does not contemplate nor has it authorized the sheriff to justify the acts of his deputy. The notice, therefore, by the sheriff in this case, was a nullity; it is no evidence of the recognition by him of the [ * 532 ] act of the deputy, and * can have no effect upon the question before the Court.

For the plaintiff, it was said that the action would lie, on two grounds. *First*, that the sheriff is answerable, generally, for the act of his deputy, without any recognition whatever. And, *secondly*, that if, to the maintenance of the action against the sheriff, such recognition is necessary, the defendant has, in the present case, completely recognized the act of the deputy. He has come into Court, taken upon himself the defence of the suit, and justified the act complained of as a trespass, as the act of his deputy in the ex ecution of a writ.

In *Saunderson* vs. *Baker* & *Al.*, it is true that, from the report of that case in *Wilson*, it would appear that it was decided on the ground of the recognition by the sheriff of the act of his bailiff. But in *Ackworth* vs. *Kempe*, (*Doug.* 40,) it was decided that the sheriff is liable in trespass, *vi et armis*, for the act of his deputy, without any recognition of the act; and it is there said that the case of *Saunderson* vs. *Baker* & *Al.* is inaccurately reported by *Wilson*. And it is to be noticed that in that case the act of the bailiff was not recognized by the sheriff; the recognition was by his clerk, the under-sheriff, and therefore was not the act of the sheriff, unless the act of his deputy is his act. It is said on the other side that there is a difference between the office of a sheriff in *England* and *here*. It is true that there is a difference in one particular; *there* the sheriff always returns the writ; *here* the deputy may do it. But in every thing else there is no essential difference. By the whole scope of our laws it appears that the sheriff, and he only, is the officer respecting whom the law has made particular provision. By the constitution, sheriffs are to be appointed by the ex-[ * 533 ] ecutive. And the statute (*a*) requires them to * give bonds to the treasurer of the commonwealth for the faithful performance of the duties of their office, and to answer for

(*a*) March 12, 1784, *sect.* 1 (*stat.* 1783, *c.* 44.)

the malfeasance, &c. of their deputies. But the sheriff appoints his own deputies; they have no authority but what is derived from him; he chooses such persons as he thinks fit; takes such security of them as he thinks proper; and they hold their offices at his pleasure. And unless he were, in all instances, accountable for the acts of his deputies, done by color of their office, the person injured might have no remedy at all; it very frequently being the case, that the deputy is wholly unable to make compensation for his torticus acts

Then as to the *declaration;* wherever the action is trespass, *vi et armis,* it must, from the nature of it, be in the present form ; and it cannot set out the act of the deputy. There is no necessity nor use in having it appear, *by the record,* that the sheriff is sued for the act of his deputy. A recovery in such case against the sheriff would not conclude the deputy in an action brought against him by the sheriff; because the deputy was not a party to the suit. And if the record would not, of itself, be conclusive evidence against the deputy, the objection fails. Besides, the sheriff could more easily prove his case *here* against his deputy than could be done in *England ;* because *here* the service of the writ appears by the return on it made by the deputy himself.

The law considers the sheriff and his deputies as one person; the authorities are clear and decisive. Both the cases cited were trespass, *vi et armis ;* and the only objection, which seemed to weigh with the Court, in one of the cases, was, that the sheriff had not made the act his own by some recognition. But that objection can have no weight in the present case, because the sheriff has, on record, recognized the act. And there is no *authority to show that any *other* action can be main- [ * **534** ] tained against the sheriff, in a case like the present.

It has been said that by the statute authorizing officers to plead the general issue, the sheriff has no authority to justify the doings of his deputy ; and therefore that the notice by the sheriff in this case was a nullity, and can have no effect upon the question before the Court. But the statute has not undertaken to determine what shall be considered as the act of the sheriff, or to ascertain how far or in what cases he shall be accountable for the acts of his deputies ; these are all left, as before, to be decided on the principles of the common law. And if by those principles the act of the deputy is, in this case, the act of the sheriff, then he is justifying his own act ; and it comes to the same point, whether it was done personally by the sheriff or by the instrumentality of his deputy.

In reply, it was said, that in all the precedents of declarations, *here,* the malfeasance of the particular deputy, by name, was

stated ; (*a*) that from the dangers and ill consequences to the sheriff, unless he had notice, in this way, to prepare for trial, the practice had been adopted ; and that there could be no necessity of varying from it. The statute must be taken as it is. The sheriff may justify his own doings ; the deputy-sheriff his ; but it does not say that the sheriff may justify the acts of his deputy.

THACHER, J., (after stating the case.) From the best consideration I have been able to give this case, it appears to me, both upon principle and authorities, that the action is well brought, notwithstanding the objection to the declaration on account of its being general. The sheriff is accountable for the acts of his deputies, and, in the case before us, has, in his defence, avowed the act [ * 535 ] * complained of and made it his own ; as much so as if he had stood by at the time, and commanded the deputy to do it. But without that, from the nature of the office and the relation between the sheriff and his deputies, I am of opinion that the sheriff is liable in this action, and therefore that judgment must be entered for the plaintiff, according to the verdict.

SEWALL, J. The general question arising in this case, and to be determined in deciding the question immediately before us, is, whether an action of trespass, *vi et armis*, will lie against a sheriff for the faults of his deputy, where no immediate command, consent, or recognition, by the sheriff, of the act alleged to be a trespass, appears in the evidence.

The law, undoubtedly, is, that in trespass all are principals, as well those who command or procure, as those who, being present, are the immediate agents in the act complained of. Therefore in declaring, in actions of this nature, it is never necessary to distinguish between the adviser, the companions, and the agent; for each and all are answerable severally and jointly ; and all as principals. That this is the legal effect, where the proof is of a direct command, is not disputed. That an implied command has the like operation, appears by the legal doctrine respecting masters and servants. It seems to be well established, by ancient and modern decisions, that the master is liable for every act done by the servant in the course of his employment, the law implying, from their relation, and from the circumstances of the act, that it is done by the procurement and command of the master. The law views the relation of a sheriff and his deputies in the same light. In official acts they are not distinguishable from each other ; the relation of command and agency is more intimate and direct, and the responsibility of the principal or master, for the

(*a*) *Quære* whether those *forms* are not all in *case*.

* acts of the servant, is maintained upon stronger reasons [ * **536** ] of public policy and regard to the public welfare than
in any case which can be supposed within the common relation of master and servant. The cases which have been cited establish these principles, and warrant, in my opinion, this conclusion from them as applied to the case before us, that *Phillips*, the defendant, is answerable for the acts of his deputy, *Clarke*, which are alleged, and which the defendant has undertaken to justify, as done by *Clarke*, under color of the office which he holds under *Phillips*, and as his servant and agent.

The supposed distinction which has been argued from the different modes adopted in *England*, and in this jurisdiction, for the appointment and employment of a deputy-sheriff, is rather, in my mind, favorable to the opinion I have expressed. With us the deputy acts by a general command ; the authority vested in him is an implied command of the sheriff in every act ; whereas in *England*, there might be some color for an argument that the special command of the sheriff, authorizing the performance of a lawful act, in a lawful manner, is no authority to the deputy in any illegal proceeding.

The supposed inconveniences to the sheriff, *viz.* a want of notice and the deficiency of evidence in the record against him, which ought, as it is said, to be so explicit in the demand, as to enable him to pursue upon it for an indemnification against his deputy and sureties, urged as objection, against the declaration used in this case, as being too general, appear to me to be of very little importance. The first may be always remedied, where a real inconvenience is suffered or apprehended, by an application to the Court, by requiring a bill of particulars, or postponement
for inquiry, or by a plea which will compel the plaintiff * to [ * **537** ] specify his charges ; as, by a justification under a particu-
lar process. And upon the second point, it is a sufficient reply that the decision against the sheriff is not conclusive against the deputy or his sureties.

The verdict in this case is, therefore, 'n my opinion, to be confirmed, as rendered upon satisfactory evidence and a sufficient declaration.

SEDGWICK, J This action is brought against the late sheriff of this county, and the single question is, whether an action of trespass, *vi et armis*, will lie against a sheriff for the act of his deputy in taking the goods of a stranger to satisfy a writ of execution.

If this case were to be decided on principle, independent of al authority, there would, in my mind, be no doubt. There is noth•
ing in which the security of the rights of the people is more inter•
ested than in defining, accurately, the limits of the authority of a

sheriff, and in giving a prompt and effectual remedy whenever those limits shall be transgressed. This cannot be the case if, for injuries done by sheriffs' officers, *by color of their offices,* redress can be obtained only from them. The office of sheriff is of the highest nature from the importance of the trusts confided to it, and the great power with which it is invested. The officer himself is supposed to possess a respectable character, corresponding to the importance of his trust and powers. He is appointed on the responsibility of the supreme executive; and, to give the greater security, bonds, with sureties, are given for a general indemnifica tion against the misconduct of the office. It must be most evident that public policy would dictate that such an officer should be *immediately* responsible for all injuries done in the office, and that the injured should not be shifted off, and obliged to resort to his officers; men appointed by him, and who hold their offices [ * 538 ] during his pleasure; *and for whom he has received such security as was satisfactory to him. The office is one—*the office of sheriff*—and so much is it so considered that in the case of *Cameron & Al.* vs. *Reynolds*, (a) it was determined, " that all actions, for breach of duty of the office of sheriff, must be brought against the high-sheriff, though by default of the under-sheriff;" that *such* actions must be brought against the high-sheriff *as for an act done by him;* and if it proceeds from the default of the under-sheriff or bailiff, that is a matter to be settled between them and the high-sheriff.

Here it may be observed that if trespass, *vi et armis,* will not lie against the sheriff, no action will. (1)

The counsel for the defendant has rested his argument principally upon authorities; and he cited 2 *Rol. Abr.* 552, *pl.* 9, 10. *Laicock's case* in *Latch,* 187, and *Saunderson* vs. *Baker & Al.,* reported in 3 *Wils.* 309, and also in *Black.* 832. In *Rolle, pl.* 9, it is said, " If a sheriff make a warrant, *to the bailiff of a franchise,* to take the goods of a man in execution, and he mistakes the goods, and takes the goods of another man, the bailiff is the trespasser, and

(a) *Cowp.* 403.

(1) *Quære* of this. The question seems not so much to be a question of principle as of the form of action. There can be little doubt, that the sheriff is answerable, *civiliter,* for every act of his deputy done *virtute* or *colore officii,* whether the act be done in strict pursuance of the authority or not. Indeed if this were not the case, the sheriff would not be responsible at all for the malfeasance of the deputy; for if the deputy act rightfully, no action of course could lie; if he act wrongfully, the answer would then be, that his authority was only to do legal acts, and he was not the servant of the sheriff to do wrong. The only doubt can therefore be, whether the action should be trespass or case. The Court of C. P. in *England* said, that " it was difficult to put a case where the master could be considered *as a trespasser* for the act of his servant." (2 *H B.* 442, *Morley* vs *Gaisford.*)

not the sheriff." This is undoubtedly good law, because the bailiff of a franchise is not a sheriff's officer, in any sense : he is neither appointed nor removable by him. It is next laid down in *Rolle, pl.* 10, "If a man be arrested by *the bailiffs of the sheriff*, and thereupon he showeth to them a *supersedeas* to discharge him, and the bailiffs refuse it, and afterwards detain him in prison, he shall have false imprisonment against the bailiffs, and not against the sheriff." Of this case Lord *Mansfield* says that, "when rightly understood, it will appear to be a particular exception to the general rule ; and the true inference from it is that *where there   [ * 539 ] is no exception, the sheriff is liable." (*a*)    It may be added that the detention by the bailiffs, from the time the *supersedeas* was shown to them, can hardly be said to be done *by color of their office*, but was rather, merely, an act of personal violence. The case in *Latch* I consider as in point for the plaintiff.    To me it seems to establish the distinction—a distinction which has ever since been respected—that the sheriff shall be answerable *civiliter*, but not *criminaliter*, for the acts of his under-officers ; and to make him answer *civiliter* is the object of this action.    The case of *Saunderson* vs. *Baker & Al.* was cited only from *Wilson*.    It is also reported by Judge *Blackstone.* (*b*)    It has been argued that the case was there determined on the ground of the recognition *by the under-sheriff* of the act of *Bolland*, the *sheriff's* bailiff ; and therefore that, independent of such recognition, the action could not have been supported.    From the case as reported by *Wilson* there seems some foundation for the argument.    It might, at least, admit of a doubt. But this doubt is removed by the report of the case in *Blackstone ;* by which it is manifest that all the judges were of opinion that the action will lie, independent of the recognition.    Nor is it possible, in my opinion, that the recognition by the under-sheriff could have the least influence upon the case ; for the sheriff was no more responsible for the act of his under-sheriff than for the act of his bailiff : nor do I perceive that the recognition was an official act of the office of sheriff ; and the sheriff could therefore in no sense be liable in consequence of it.

But this question was finally decided in the case of *Ackworth* vs. *Kempe.* (*c*)    It was an action of trespass, *vi et armis*.    The goods of one *Wise* had been conveyed to *Ackworth* by a bill of sale.    * Two writs of *fieri facias*, at the suit of dif-   [ * 540 ] ferent persons against *Wise*, were delivered to the sheriff of *Sussex*, the defendant, who granted warrants to his officer to execute them.    The officer, in consequence of the warrants, took

(*a*) *Ackworth* vs. *Kempe  Doug.* 42      (*b*) 2 *Bl. Rep.* 832.      (*c*) *Doug.* 40.

the goods abovementioned in execution and sold them.    Whereupon
the action was brought, without joining the officer as a defendant.
The plaintiff obtained a verdict ; and upon a motion for a new trial,
several grounds were assigned, and among them, "that the action
would not lie against the sheriff, because, his warrant being to take
the goods of *Wise*, he had given no authority to his officer to take
the goods of any other person ; and therefore was not answerable,
if goods which did not belong to *Wise* had been taken." All the
other grounds than the one abovementioned having been removed,
the court took time to consider that ; Lord *Mansfield*, at the same
time, observing that if trespass would not lie, no other action would.
After deliberation, the judgment of the court was delivered unani-
mously in favor of the plaintiff ; the *Chief Justice*, in the conclusion
of his argument, observing that the point appeared to be extremely
clear, and that it was not fair to puzzle the court so long with it.

The question again came under the consideration of the Court of
*King's Bench* in the case of *Woodgate* vs. *Knatchbull*. (*a*)    It was
an action grounded on the 29 *Eliz. c.* 4, for extortion by taking a
greater recompense than was allowed for levying an execution.
There were three counts in the declaration, all of which charged
the excess to have been taken by the sheriff.    On the trial it ap-
peared that the sheriff's officer had committed an offence against
the act of parliament, but that the sheriff was a stranger to and had
not intermeddled with the transaction.    For this reason
[ * 541 ] a rule * was obtained to show cause why the verdict
which had been found for the plaintiff, should not be
set aside.    The case was argued with great ability, and the rule to
show cause why the verdict should not be set aside was unanimously
discharged by the court.    *Ashurst*, J., observed that "there is one
general principle which appears to be clear—that the sheriff is
personally liable for every act of his bailiff."    BULLER, J., adds,
"The sheriff is the only officer known to this court ; he may employ
whom he pleases, but he is answerable, *civiliter*, for the acts of all
those employed by him.    On the general question I have no sort of
doubt but that the sheriff must be answerable."    And GROSE, J.,
after declaring himself, without any doubt, in favor of the action,
concludes an able argument by observing—"It has been said that
there will be a hardship on the sheriff ; but I think that the hardship
is on the other side.    For if the sheriff be not liable, the party can
only have recourse to the bailiff who is unknown to him, but who
is well known to the sheriff ; and therefore the sheriff knows his
security, but the party does not."

(*a*) 2 *T. Rep.* 148

On the whole we are all of opinion that this action is well sup
ported by the evidence, and therefore that judgment must be
entered according to the verdict. (*a*)

*Judgment for the plaintiff.*

Afterwards a motion was made to set aside this verdict, upon a
suggestion of gross misbehavior in the jury. SEDGWICK and SEWALL,
justices, against the opinion of THACHER, J., admitted one of the
jury, offered as a witness by the defendant, to be sworn and
examined respecting their conduct in finding the verdict. From his
testimony, the fact appeared to be, that ten of the jury, before a
unanimous consent in a verdict for the plaintiff, named
each of them a sum for damages: * the witness and   [ * 542 ]
another juror refusing to name any sum. The sums
mentioned being added together, the amount was divided by twelve,
and the sum thus found became the amount of damages in which
all the jury finally agreed. Their verdict, afterwards delivered and
confirmed in court, in the presence of the witness and the other
juror who had before dissented, was there received and recorded.
This witness also swore that he had thought it his duty to coincide
with the rest of the jury, but in his mind he had never approved of
the verdict or consented to it.

After hearing this testimony, THACHER, J., retaining his opinion,
that no evidence ought to be heard from a member of the jury upon
suggestions of this kind, was for rejecting the motion.

SEWALL, J. I concur with my brother in rejecting the motion;
but it is upon another ground. The facts sworn by this witness
do not warrant the charge of gross misbehavior, or show any im
propriety of conduct in the jury sufficient, in my opinion, to invali-
date their verdict. (1) And upon the other point to which the

---

(*a*) Vide post, vol. xi. 57, *Barnes* vs. *Hurd;* and the query how far the opinion of
the court in that case is consistent with that here given in regard to the proper *form
of action.* [*Campbell* vs. *Phelps,* 17 *Mass.* 244. 1 *Pick.* 62. But see the note to this
case, 17 *Mass.* 244.—ED.]

(1) Upon a motion to set aside a verdict upon an affidavit of two jurors, who swore
that the jury, being divided in their opinion, *tossed up,* and that the plaintiff's
friends won,

*Lord Mansfield* said, the court cannot receive such an affidavit from any of the
jurymen themselves, in all of whom such conduct is a very high misdemeanor; but
in every such case, the court must derive their knowledge from some other source;
such as from some person having seen the transaction through a window, or by
some such other means; and the rule was refused. (1 *Durnf. & East,* 11. *Vaise* vs.
*Delaval.*)

So where, upon a motion for a new trial, the affidavit of the foreman of the jury was
produced, to prove that the verdict was decided by lot. *Lord Chief Justice Mansfield,*
after consulting the judges of the other courts, delivered the opinion of the Court of
Common Pleas, that the affidavit of a juror could not be received. His lordship
observed, that it was singular that almost the only evidence of which the case admits
should be shut out; but considering the arts which might be used if a contrary rule
should prevail, he thought it necessary to exclude such evidence; and his lordship

witness speaks, he is not to be believed or heard. The record of a verdict implies a unanimous consent of the jury, and is conclusive and incontrovertible evidence of the fact. Besides, the secret intention or mental act of a juror can never be a subject of legal inquiry, and, from the necessity of the case, his conduct before the court is the best and only evidence that can be admitted of his assent to a verdict delivered in his presence. With respect to the conduct of the jury among themselves previous to their verdict, the testimony of a juror may be admitted as to overt acts, which may be the subject of legal inquiry, and in that each member of the jury may be a competent witness. And when, upon such [ * 543 ] evidence, any gross misbehavior or legal *impropriety of conduct, sufficient to destroy the credit of a verdict, shall be made to appear, a verdict thus invalidated ought to be set aside. But this has not happened in the present case. The members of a jury, before they agree, must argue the questions of the case committed to them, and each man may be supposed to express his opinion as to the general question for which party the verdict shall be, and, if for the plaintiff, for what amount of damages. It is not important, as it strikes me, by what method a sum for damages shall be proposed, if finally there is a unanimous assent of the jury in the sum declared by their verdict. (1)

SEDGWICK, J., gave no opinion upon the effect of the evidence; but the motion was rejected.

*Parker* and *Wilde* for the plaintiff.

*S. Thacher* and *W. Crosby* for the defendant.

suggested, that if it were understood that verdicts might be thus set aside, a juror friendly to one of the parties might propose a decision by lot, with a view to such a result. (*Brooke* vs. *White*, 1 *Bos. & Pul. N. S.*) [*Owen* vs. *Warburton*, 1 *N. R.* 326.—ED.]

In a similar case, which arose in the Supreme Court of Pennsylvania, *Yeates, Justice*, delivered his opinion at length, that the deposition of one of the jurors that they decided their verdict by lot ought not to be received. The other justices gave no opinion upon this point. *Claggage* vs. *Swan*, 4 *Bin. Rep.* 150.

[Affidavits of jurymen will not be received to impeach a verdict.—*Dana* vs. *Tucker* 4 *Johns. Rep.* 487. *Sargeant* vs. *Denniston*, 5 *Cowen*, 106. Ex- parte, *Kendall* 6 *Cowen*, 53.—*People* vs. *Columbia Common Pleas*, 1 *Wend.* 297.—*Robbins* vs *Wendover*, 2 *Tyler*, 11.—3 *Gill. & Johns.* 473.—*Willing* vs. *Swasey*, 1 *Browne*, 132. —*Bladen* vs. *Cockey*, 1 *Har. & M'Hen.* 230.—*Saville* vs. *Ld. Farnham*, 2 *Man. & Ry* 216.—ED.]

(1) Upon a rule to show cause why a new trial should not be had, it appeared that the jurors, not agreeing as to the finding of a verdict, voted for one; that the votes of seven of them were for finding it as it was found, and that no objection was made by the other five when the verdict was given.

The rule was discharged.

And by the Court. Nothing in this case was determined by chance. The five jurors might ultimately be convinced by the seven. But if they only acquiesced in the finding of the verdict, that is sufficient; and they shall not now be received to say that they did not acquiesce. *Lawrence* vs. *Boswell*, *Say. Rep.* 100