## DAN NEWTON *v.* ASAHEL BOOTH.

Where a witness had covenanted with the defendant to pay certain notes, which were pleaded in offset to the plaintiff's demands, *it was held*, that he was an incompetent witness for the plaintiff, and that releases from the witness to the plaintiff and defendant would not restore his competency.

It was further held, that, although the plaintiff had acquired an interest in the testimony of the witness before the making of the covenant, yet, if the covenant was made by the consent or procurement of the plaintiff, the witness was still incompetent.

A new trial will not be granted upon the affidavits of some of the jurors that, if they had recollected certain items of the plaintiff's claim, and included them in their estimate, they should not have agreed upon the verdict, especially if other jurors give a different account of the manner in which the jury came to their conclusion, nor upon proof that some of the jurors believed the plaintiff could review the cause, which induced them to agree to the verdict, when, in fact, the plaintiff could not review.

*Quære.* Should the affidavits of jurors, in such cases, be received?

ASSUMPSIT, for goods sold, labor done, money paid, &c.

Plea, non assumpsit, and a plea in offset on sundry promissory notes executed by the plaintiff to the defendant.

Issues were joined to the country.

On the trial in the county court, the plaintiff offered one George Newton, as a witness, to whom the defendant objected, on the ground of interest in the event of the suit; to prove which, the defendant offered in evidence an agreement between the plaintiff and defendant, dated February 11th, 1833, in and by which the defendant agreed to furnish the plaintiff with materials for the manufacturing of shovels, which the plaintiff agreed to manufacture, and the nett proceeds of the shovels, after deducting the cost of the materials, were to be applied in payment of demands in favor of the defendant against the plaintiff; also an indenture between the defendant of the one part and George Newton and Jonathan G. Davenport of the other part, dated August 15, 1834, in and by which agreement the defendant covenanted, among other things, with said George and Jonathan to purchase and deliver for them, within the term of two years, materials for the manufacturing of shovels, hoes, and forks, to the amount of $1,500, and to receive the same at specified prices and

apply the amount, after deducting the value of the materials, and interest thereon, upon the notes of the plaintiff, pleaded in offset in this suit, from time to time as they were delivered, specifying the times when they were to be delivered; and in consideration of the defendant's covenants, *the said George and Jonathan covenanted, among other things, to pay to the defendant the amount of the notes executed by the plaintiff to the defendant, being the same notes pleaded in offset in this action.* This indenture was witnessed by the plaintiff and one Drury. The defendant also offered in evidence the notes pleaded in offset.

The plaintiff then offered in evidence a release from said George Newton, discharging the plaintiff from all claims and demands which he might have, or had, to have any money, in the hands of plaintiff, received for shovels manufactured by the plaintiff for the defendant, under their agreement of February 11, 1833, applied in payment of the notes which he, the said George, had covenanted to pay, by the indenture of August 15, 1834, and from all claims which he might have arising from either of said agreements; also a release and covenant from said George to the defendant, wherein the said George released the defendant from all claim and defence which the said George had or might have against the defendant growing out of this suit, and particularly from all claim or defence which he might be entitled to make in a suit that might be commenced by the defendant on the indenture of August 15, 1834, above mentioned, and covenanted with the defendant that if he, the said George, should in any way defend against such action by reason of a verdict and judgment in this suit, he would pay the defendant whatever damages he might sustain by reason of his availing himself of such verdict and judgment.

From this showing, the county court decided that said George was incompetent to testify as a witness, and excluded him; to which decision the plaintiff excepted.

The case was submitted to the jury upon testimony introduced by both parties, under a charge from the court that was not excepted to, and the jury returned a verdict for the plaintiff to recover a balance of $9,90 damages and costs.

The plaintiff, at the present term of this court, also filed his petition for a new trial, setting forth the recovery of said

judgment, and that, in consequence of the mistakes of the jury who tried the cause, he recovered a judgment for a less sum than the jury would have found had they discovered their mistakes before returning their verdict.

The petitioner introduced the affidavits of four of the jurors who tried said cause, tending to prove, in substance, that the jury, in investigating the claims of the parties, considered that the defendant had received from the plaintiff about three hundred dozen shovels, and had accounted for that quantity, or so near that quantity that the jurors thought the settlement of the parties should not be disturbed; but they believed that, in arriving at that conclusion, the jury made two mistakes, to wit; in ascertaining the number of shovels which the defendant was accountable for, no account was taken of the steel contained in a mortgage of personal property from the plaintiff to the defendant, dated February 11, 1833, except so far as the steel was added to the amount charged on the defendant's books, to supply sufficient steel to manufacture the shovels, for which the jury made him accountable from February 11, 1833 to June 12, 1833; and in estimating the number of shovels for which the defendant had accounted, no deduction was made on account of a charge of thirty four dozen shovels, contained in an account rendered by the defendant on the sixth of February, 1834, and then adjusted, and that if they had recollected these items at the time of agreeing to the verdict, these jurors would not have agreed to such a verdict as was agreed upon and rendered in court, as the plaintiff would have been entitled to a much larger sum.

The officer who had said jury in charge while they were deliberating, testified that three of the jurors who agreed to the verdict found by the jury would not have agreed to such verdict had they not believed that the cause would be reviewable on the part of the plaintiff.

Another of the jurors testified that when the jury first conversed about the case, after they had retired to their room, they differed as to whether there was sufficient evidence on the part of the plaintiff to justify them in looking back of the settlement made by the parties; that while the jury were together, they went into an examination of the credits on the books, looking them all through, and that they also had the

papers which were introduced as evidence in the case on the part of the plaintiff, among which was an account current upon which the parties made a settlement in February, 1834, on which is an item for thirty four dozen shovels, accounted for in the credit, which ought not to be credited at all; that he believed, also, that the mortgage of personal estate from Dan Newton to Asahel Booth, of February 11, 1833, was also in the jury's possession; that he recollected that the first mentioned paper was examined by the jurors; that when the jurors finally agreed, they all assented to the verdict, and that during the time they were together, it was mentioned distinctly that if they rendered a verdict for the plaintiff there could be no further review, but if a verdict were rendered for the defendant, the plaintiff could review; that he had no recollection that any of the jurors said, at the time they consented to bring in a verdict, that they would do it because the plaintiff could have a review, or any thing to that effect; but, on the contrary, they appeared to be well satisfied with the verdict, and he supposed they all came to the conclusion that there was not sufficient evidence for them to go back of the settlement made by the parties.

The exceptions and petition for new trial were both argued together.

*P. Isham,* for plaintiffs.

1. There is nothing in the case to show any liability by Geo. Newton and Davenport on their covenant, for there is no evidence that Booth ever furnished any steel, or other materials, from which the articles mentioned in the agreement were to be manufactured, and unless furnished there was no liability on the covenant, for it was a condition precedent.

2. The effect of the contract is a virtual sale of those notes to Newton and Davenport, and Booth receives therefor their covenant for the payment of the amount in collateral articles. If Booth had brought an action on those notes, this agreement would be a defence, for it is the substitution of this contract for the other, and though given by third persons, it will have this effect, if the parties so intended, " and this intention may be inferred from the operation of the new contract." 4 Wash. C. C. R. 271.

3. The witness was competent in this case, for whatever might have been the verdict, it could not have been used by

George Newton and Davenport in a suit that might have been commenced against them on their covenant, for they are estopped to deny that indebtedness by the express statement of that fact and the exact amount thereof in their indenture. 7 Conn. R. 214. 4 Peters' R. 83. 3 Mason's R. 347.

4. There is no objection to the competency of the witness, unless rendered incompetent by his contract with the defendant of August, 1834. If previous to that he was competent, it is not in the power of the witness, by any subsequent contract with the party who makes the objection, to render himself incompetent and deprive the other party of the benefit of his testimony. 2 Cow. Phil. Evid. 272, 275.

On the petition for new trial, it is apparent that the jury have not agreed upon one point on which their verdict rests. And when they do not thus agree, says Parker C. J., their verdict cannot stand, " unanimity being required." 6 Pick. R. 431.

It is apparent, also, that the jury greatly erred in making up their verdict, not only in ascertaining the amount of steel furnished, but also in ascertaining the number of shovels accounted for by Booth, which would have added several hundred dollars to the verdict for the plaintiff, so that a mistake on their part exists, not only in calculation, but also an error arising from forgetfulness, to prove which, *ex necessitate,* the affidavits of the jurors must be used. 1 Burr. R. 383. 3 Caine's R. 58.

*J. S. Robinson* and *W. S. Southworth,* for defendant.

1. The testimony of George Newton was inadmissible, though the witness became interested after the event happened to which he was called to testify.

There was no fraud upon the plaintiff. *Forrester* v. *Pigou,* 1 M. & S. 9. S. C. 3 Camp. 380. 1 Phil. Ev. 99.

There was not only absence of fraud, but it is manifest, from the magnitude of the undertaking, and from the fact that to that contract the *plaintiff was a witness,* that the interest of the witness was *acquired by the assent and concurrence of the plaintiff.* 2 Stark. Ev. 751, note. *Jackson* v. *Ramsey,* 3 Johns. Cases, 234.

2. It cannot be pretended that, by the covenant, the notes *are extinguished.*

By the covenant, the notes are expressly recognized as still remaining.

The bond or covenant of a third person does not extinguish a parol contract, unless given in substitution of the parol contract.  *Hooper's case*, 2 Leon, 110.  Hobart's R. 166, note.  5 Mass. R. 11.  *White* v. *Cuyler*, 6 Term. R. 177.

3. It was not incumbent upon the defendant to show the performance of the covenant of 1834, on his part.

The witness covenants *absolutely* to pay the notes.  The conditions precedent have been waived by the witness, if such they are.

Again, the defendant has performed a part of his undertaking, and the witness may have compensation for the nonperformance of the remainder in an action.  Booth might therefore maintain a suit without averring performance.  1 Saund. 320, b.  1 Sw. Dig. 198.  *Boone* v. *Eyer*, 1 H. Bl. 273, note.

But the plaintiff is not held to the same proof that would be required in an action on the covenant.

4. The releases executed on the trial did not discharge the interest of the witness.

That given by the witness to the plaintiff did not; because the *application of plaintiff's claim is at once* made in this suit.  It is evident that no one can release the witness but the person who holds the covenant against him.

The release and covenant from witness to Booth is also ineffectual.  It is a novel attempt of an obligor to release himself.  If it be said that the covenant estops the witness from making use of the verdict in this case, and therefore has the effect of a release, the answer is that by the plaintiff's proving his claims, in this suit, the notes are by this judgment *forever settled.*

Again, the witness only would be estopped.  Davenport could still avail himself of the verdict, and if it would serve as a defence for him on the covenant, it would equally benefit the witness.  1 Sw. Dig. 185.  17 Mass. R. 166. 18 Johns. R. 459.

In relation to the petition for a new trial, the defendant contends.

I. That the affidavits of jurors are not to be received to impeach their verdict, by showing misconduct as the ground

BENNINGTON, upon which they agreed upon a verdict, or that they intend-
*February,*
1841.    ed something different from the verdict rendered.    Tidd's

Newton    Prac. 817.    *Vaise* v. *Delaval*, 1 Term. R. 11.    *Jackson* v.
*v.*      *Williamson*, 2 Term. R. 281.    *Rex* v. *Woodfall*, 5 Burr.
Booth.    2667.    *Owen* v. *Warburton*, 1 N. R. 326.    *Robbins* v.
*Windover et al.*, 2 Tyler R. 11.    Id. 147.    *Dana* v. *Tucker*,
4 Johns. R. 487.    1 Wash. R. 77, 81.    *State* v. *Freeman*,
5 Conn. R. 348.    *Bridge* v. *Eggleston*, 14 Mass. 248.
21 No. Am. Jurist, 164.    3 Gill. & Johns. 473.    *Coster* v.
*Merest*, 7 Com. L. R. 433.    *Saville* v. *Ld. Farnham*, 17 Id.
30.

II. If received, the affidavits do not disclose sufficient ground for granting a new trial.

The notion of one or two of the jurors that the plaintiff was still entitled to a review, is no ground for a new trial. 1 Sw. Dig. 775.    Kirby, 112.    4 Mass. R. 391.    11 Mass. R. 358.    2 Term. R. 281.

The opinion of the court was delivered by

BENNETT, J.—This case comes before the court on a bill of exceptions, and also on a petition for a new trial.

It seems the defendant pleaded in offset several notes of hand which he had against the plaintiff. In 1834, Geo. Newton and Davenport gave to the defendant their covenant to pay the notes, and, in this situation, George Newton was offered as a witness on the part of the plaintiff, and was excluded by the court below.    Is he not interested in the event of the suit, and, therefore, incompetent ?    If the plaintiff could establish a sum due from the defendant, equal to the sum due on the notes which have been pleaded in offset, the notes would, by this proceeding, be satisfied.    If less, then there would be a satisfaction of the notes, *pro tanto*.    The witness was direct-ly interested in the establishment of the plaintiff's claim.    If established, it in effect went to release him from liability on his covenant.    When the notes had been once satisfied, the covenant of the witness to pay them became valueless.    It is said that the record, in this case, could not be used in a suit on the covenant against the witness, on the ground that it is *inter alios*.    But the record would be admissible to show a judgment rendered, as between the parties to it ; and if the defendant was found not to be in arrear, it would show a

satisfaction of the notes pleaded in offset, and would be con-

clusive upon Booth. It is said that the plaintiff in this case had acquired an interest in the testimony of this witness *prior* to his having executed the covenant in 1834, and that he cannot be defeated of that right by the witness's becoming subsequently interested. But it is to be remarked that the plaintiff was a witness to the covenant of George Newton, and, it being a contract in which the plaintiff had an interest, it must be taken that he was privy to the contents of that instrument and consenting to its execution. Here, then, is no wanton act of the witness to deprive the plaintiff of his testimony, and if he became interested in the suit in consequence of having performed some act, by the consent or procurement of the plaintiff, he is still incompetent, and was properly rejected by the county court.

It is apparent that the releases, executed on the trial, could not restore the competency of the witness, and, indeed, they are not relied upon by the plaintiff's counsel. The plaintiff has no legal rights in the covenant to Booth, upon which the release to plaintiff could operate, and, besides, the effect of these proceedings is a direct application of one demand in satisfaction of the other. The release to Booth is inoperative. The covenanter cannot well release himself.

The plaintiff claims a new trial for the reasons set forth in the affidavits of several of the jurors. The object of this testimony is to show that the verdict was assented to, by the jurors, who have given their affidavits, in consequence of some errors having occurred during the deliberations of the jury, as they think, upon subsequent reflection.

There has been considerable conflict in the English authorities upon the question, whether the voluntary affidavits of the jurors who tried the cause, can be received to impeach their verdict, on the ground of misbehavior in the panel.

The question, however, has been long settled in the English courts, and, as I think, upon sound principles, against their admissibility. There has been as little uniformity in the opinions of American judges in the different states, upon this point, and it is not uncommon that there has been a conflict of opinion between the different judges of the same state. In the case of *Smith* v. *Cheetham*, 3 Caines' R. 56, two of the judges maintained that the affidavits of the jurors

should be received to impeach their verdict, while Kent, Ch. J. was of the contrary opinion. It was subsequently, in the case of *Dana* v. *Tucker,* 4 Johns. R. 488, held, that Kent's opinion was the better one, and was adopted in that case by the court. In Connecticut, it had been the practice to admit such affidavits ; but in the case of the *State* v. *Freeman,* 5 Conn. R. 350, the rule was changed by a unanimous opinion of the court. In this state, at an early day, in the case of *Robbins* v. *Windover et al.,* 2 Tyler's R. 11, it was held that the affidavit of one of the jurors who tried the cause, could not to be admitted to show misbehavior in one of his fellows. The court seemed ready to adopt, as a general rule, that the affidavits of jurors, respecting the deliberations which led to the verdict, should in no civil action be admitted. In *Harris* v. *Huntington et al.,* 2 Tyler's R. 147, the same question was again before the court ; and the court say, " the oftener it is argued, they are the more confirmed in the correctness of former decisions on this point." In *Cheney* v. *Holgate,* Bray. R. 171, the same doctrine is adhered to, and I am not aware that a different rule, to any extent, has been acted upon in this state. In the case in 5 Conn. R., Hosmer, Ch. J., uses this strong language ; " The opinion of almost the whole legal world is *adverse* to the reception of the testimony in question, and, in his opinion, on invincible foundation." It may indeed seem strange, as is said in the case of *Owen* v. *Warburton,* 1 N. R. 329, by Sir James Mansfield, Ch. J., " that almost the only evidence of which the case admits should be shut out ; " but he proceeds to say, " considering the arts that might be used if a contrary rule were to prevail, we think it necessary to exclude such evidence." The reason given for the rule, in some of the cases, is, that such evidence would expose the jury to be proceeded against criminally for such misbehavior. This cannot be entitled to much consideration. If this were the reason, of the rule, it should not extend to exclude voluntary affidavits, nor to cases where the affidavits simply disclosed misbehavior in some of the other fellow jurors. The rule, I conceive, is founded upon other and weightier reasons. To admit them would be open the door to the most dangerous practices, and would be most mischievous in its consequnces. The jury would be exposed to have their sympathy wrought

upon by a designing and losing party, and subjected to the exercise of the most pernicious arts. Tampering and intrigue would become the order of the day, and an alarming source of litigation would be opened. If we are to penetrate the recesses of the jury room, through the medium of the jurors themselves, and take cognizance of all that passes in their secret deliberations, it would indeed be difficult to say when *a suit had been terminated.*

In the case from 5 Conn. Rep. a juror was not permitted to testify that one of his fellows disclosed matters to the jury within his own knowledge, not given in evidence on trial. The case in 2 Tyler, 11, and many others, are to the same effect. In the case of *Rex* v. *Woodfall*, 5 Burr, 2667, it is said that, upon a motion for a new trial, the affidavit of a juror cannot be read, as to what he thought or intended upon the bringing in of the verdict, and in *Rex* v. *Thirkell*, 3 Burr. 1696, the prisoner had been convicted, and before sentence had been passed, eight of the jurors had signed a paper in the prisoner's favor, disapproving of the verdict which they had given. Lord Mansfield is reported to have expressed great dislike of such representations, made by the jurors after verdict, saying, that " to listen to them would be of very bad consequence," and Wilmot, J. added he thought they should be totally disregarded. In *Jackson* v. *Williamson et al.*, 2 Term R. 281, the court refused to receive the affidavit of the jurors, made after the trial, showing what their intention was in rendering their verdict, on the ground of its introducing a dangerous practice, and one which would be productive of infinite mischief. The affidavits of the jurors, relied upon in this case, as furnishing ground for a new trial, are evidently made upon an *after-thought.* To admit jurors, after having been exposed to the *inquisition* of the losing party, and upon after-reflection, which may have led them to doubt as to the correctness of their verdict, or even to dissent from it, to detail the proceedings in the jury room, and to testify to matters frequently complex, and, perhaps, not accurately comprehended at the time, or imperfectly recollected, and thus make it a ground of impeaching their verdict, would, in my opinion, form a bad precedent, and of dangerous tendency.

It is not, however, necessary for the court to decide the

question in regard to the admissibility of these affidavits of the jurors ; and whatever my private opinion, as a member of the court, may be, it is possible there may be some disagreement upon this point.   As we are all well agreed in the result, that, if the affidavits are received, they furnish no sufficient cause for disturbing the verdict, the decision of the court proceeds upon that ground, and, especially, as in this case there is some disagreement in the statements of the jurors as to the grounds upon which they proceeded in coming to a result.

The fact testified to by the officer, who attended the jury, can have no effect.   The jurors are not judges of the legal effect of their verdict ; nor as to its finality.   If they misapprehend in either particular, it cannot be assigned as cause for a new trial.   1 Swift's D. 775.   If the misapprehensions of a jury, in regard to a cause being reviewable, were made the ground of a new trial, it would indeed be fruitful of litigation.

The judgment of the county court is affirmed ; and the petition for a new trial must be dismissed, with costs.