ALBANY,
Oct. 1828.

The People
v.
Columbia C. P.

THE PEOPLE, on the relation of John Hosmer, *vs.*
COLUMBIA COMMON PLEAS.

MOTION for a mandamus. Robert Patterson confessed a judgment in the Columbia common pleas, in favor of John Hosmer, on the 28th day of August, 1826, by bond and warrant of attorney, conditioned for the payment of $5300, on which a *fi. fa.* issued on the same day, and the personal property of the defendant levied upon. A few hours after the delivery of the execution, another judgment was entered against the defendant in favor of Elisha Williams, as trustee for the Bank of Columbia and others, also on a bond and warrant, conditioned for the payment of $25,000, and a *fi. fa.* on that judgment delivered to the sheriff. The sheriff sold the property of the defendant on the first execution, and the proceeds of the sale were stayed in his hands by a judge's order, on the motion of the plaintiff in the second execution, who applied to the common pleas to set aside the first judgment, on the ground of fraud. This allegation being denied, the common pleas awarded a feigned issue to try the question, which was tried, and the jury returned a verdict that the first judgment was fraudulent, and under a stipulation agreed upon between the parties, certified that there was honestly due from Patterson to Hosmer, at the rendition of the first judgment, the sum of $3400. After the verdict, Hosmer obtained the affidavits of eight of the jurors, " that the impressions which they received on the trial, and from the charge of the judge, were, that unless the jury found the judgment in favor of Hosmer fraudulent, he would be entitled to collect the whole amount thereof; and they believed, that in finding it fraudulent, they established nothing more than that it was or would be fraudulent for Hosmer to collect the *whole amount ;* they however believing, from the testimony, that the judgment was taken *honestly,* for the purpose of securing a just debt to Hosmer, that such debt amounted to the sum certified by them, that Hosmer *did not intend to defraud the other creditors* of Patterson, and that the

*On a motion for a new trial, affidavits of jurors cannot be received to shew their impressions as to the effect of their finding, or that they intended something different from what they found by their verdict. This court will not attempt, by mandamus, to control or coerce the discretion of a subordinate tribunal ; they will, however, review the decisions of such tribunals, and if they have erred in the application of legal principles, the proper remedy will be applied. Whether affidavits, offered on a motion for a new trial, ought to be received or rejected, is a question not of discretion, but of law.*

only effect of the verdict would be, to prevent Hosmer from collecting a greater sum on his judgment than had been certified to be due by the jury;" upon which application was made to the common pleas for a new trial of the feigned issue. The court refused to receive the affidavits of the jurors, denied the motion for a new trial, set aside the first judgment, and directed the sheriff to pay over the money collected by virtue of the execution issued thereon, to the plaintiff in the second judgment. A motion was now made for a mandamus to vacate the last mentioned rules, and directing the common pleas to proceed on the motion for a new trial, founded on the affidavits of the jurors.

*A. Jordan,* for relator, admitted that the affidavits of jurors cannot be received to impeach their verdict, but insisted they are admissible to shew that the jury were misled by the charge of the court. In *Sargent* v. *Deniston,* (5 *Cowen,* 120,) where the plaintiff asserted an unfounded claim as a ground for enhancing the damages, and the judge *omitted* to instruct the jury that such claim was not tenable, and the jury gave their verdict, assuming the claim to be legal, the omission of the judge was considered equivalent to a misdirection. Here was not only an omission, but a misdirection ; as the jurors, from the charge of the judge, received the impression, that unless they found the judgment fraudulent, Hosmer would be entitled to collect the *whole amount ;* whereas, if the judgment was taken for a *bona fide* debt, it was not fraudulent, though for an amount not actually due, provided it was not taken with an intent to injure or defraud creditors. In 7 *Cowen,* 494, the court refused a *certiorari* in this case ; and if a certiorari will not lie *before trial,* it may well be questioned whether a writ of error can be brought *after trial ;* and if error will not lie, the party is remediless, unless by mandamus.

*E. Williams,* contra. A mandamus will not lie to a court of common pleas, directing a new trial to be granted in any case, and especially it will not be directed in the case of a feigned issue. Though, in extreme cases, this court might interfere and control the court below, upon questions of fact

presented in the form of a motion for a new trial, they will not do so in a case like the present. If the charge of the judge was incorrect, the party should have presented his bill of exceptions, and reviewed it upon a writ of error; (2 *Cowen*, 482, 3 ;) and in this case he has, in fact, presented his bill of exceptions.

The principle adopted in *Sargent* v. *Deniston* will not be extended to this case. There, affidavits of jurors were received in reviewing a trial at the circuit, to shew what amounted to a misdirection of the court : here affidavits were offered to the same court who tried the cause, who heard the evidence, and who charged the jury. In 6 *Cowen*, 54, this court say, that in *Sargent* v. *Deniston* they expressly disclaimed the idea of trenching on any of the cases in which it had been refused to hear the affidavits of jurors, shewing a mistake in making up their verdict.

Besides ; this was the trial of a feigned issue to inform the conscience of the court, which took place in their presence, and they must be the best judges to determine whether another trial is necessary to satisfy them of the fraud alleged. It was competent to the common pleas to discharge the feigned issue whenever they pleased. The issue had been awarded to give facility to the parties to produce their testimony. This had been produced, and the court might rightfully act upon the evidence, if by it their judgment was convinced, their conscience satisfied.

*By the Court*, SAVAGE, Ch. J. It is well established, by frequent decisions, that this court will not attempt, by mandamus, to control or coerce the discretion of a subordinate tribunal. It is the duty of the court, however, to review the decisions of such tribunals when properly brought up, and if they have erred in the application of legal principles to the cases before them, the court will apply the proper remedy. Whether the affidavits of the jurors, rejected by the common pleas, should have been received, is a question not of discretion, but of law ; and if the court erred in that respect, their decision is a proper subject of review in this court, and a remedy may be afforded by mandamus.

The rule in England is, that the courts will not suffer the jury to explain, by affidavit, the grounds of their verdict, or to shew that they intended something different from what they found. (2 *Tidd*, 817.) This rule is expressly recognized in *Sargent* v. *Deniston*, (5 *Cowen*, 121.) There the affidavits of jurors were received to shew a mis-conception of the rule of damages, as derived from the charge or omission of the judge. The cases referred to by Mr. *Tidd*, and by Mr. Justice *Sutherland* in *Sargent* v. *Deniston*, establish the rule as laid down. In *Jackson* v. *Williamson*, (2 *Term R.* 281,) the whole jury united in an affidavit that they *intended* to find a verdict of £31 ; and supposed that by finding £30, the prothonotary would of course add £31, and thus make up the sum of £61, yet the court refused to act upon the affidavit, saying that it would introduce a very dangerous practice, if they were to admit such an affidavit ; that it would be productive of infinite mischief, and it was better that the plaintiff in that cause should suffer an inconvenience, than that such a rule should be introduced. 2 *Black. R.* 804, is to the same effect. In 5 *Burr. R.* 2667, Lord Mansfield says, where there is a doubt upon the judge's report as to what passed at the time of *bringing in the verdict*, then the affidavits of jurors or by-standers may be received upon a motion for a new trial, or to rectify a mistake in the minutes ; but an affidavit of a juror never can be read, as to what he then *thought* or *intended*. The case of *Cogen* v. *Ebden and another*, (1 *Burr. R.* 383,) is not at variance with this rule. There, upon *two different issues*, the jury found one issue in favor of the plaintiff, and the other in favor of the defendant ; but the foreman gave in the verdict as a *general* verdict for the defendant upon both issues. The court, from the affidavit of eight of the jurors, confirmed by the judge's notes, were satisfied that this was a *mistake*, and that the verdict was erroneously delivered in by the foreman, and they accordingly amended it. This was a mistake of the foreman in presenting the finding of the jury ; and for the purpose of shewing that mistake, the affidavit was received ; not to shew, as in this case, the impressions of the jury as to the effect of their

finding. The court of common pleas, therefore, decided right, in refusing to receive the affidavits, and the motion for a mandamus is denied.