### FORSHEE v. ABRAMS et al.

Where in an action for a joint libel against several defendants, to which there was a joint answer of not guilty, some of the defendants filed their affidavit, setting forth that certain of their co-defendants were material and necessary witnesses for them—that they could prove matters material to their defence by said co-defendants, which could not be proved by any other witnesses—and that justice required they should have separate trials, upon which affidavit a motion for separate trials was made and overruled, on the ground that such co-defendants would not be competent witnesses on the trial of the others; *Held*, 1. That where such a motion is granted or refused by the court below, in the exercise of its discretion, this court will require a very strong showing, before it will hold such discretion to have been improperly exercised.   2. That under the circumstances stated, their co-defendants were not competent witnesses for the parties asking separate trials.

Where in an action for libel, the defendants, after proving by a witness that the general character of the plaintiff was bad, and that he was reputed to be a "slanderer," proposed to prove that the plaintiff had been "guilty of speaking slanderous words of *others*," which evidence was rejected; *Held*, That the evidence was clearly inadmissible.

And where in such an action, the defendants proved by one F., that the plaintiff's general character, in the neighborhood where he resided, was bad; and then offered to prove by the same witness, that the plaintiff was generally reputed a *malicious* man, which evidence was excluded; *Held*, That the evidence in no manner tended to establish the fact that the libel was not published, nor to show that the plaintiff's damages should, for that reason, be less, and was properly excluded from the jury.

And where in such an action, the defendants proved that a short time previous to the burning of the school-house, referred to in the libel, an *attempt* was made to burn the said house; that about the time of this attempt, a witness passed the house late at night, saw a great light therein, and heard persons talking inside, but who they were, the witness could not state; that one B. was a near neighbor of plaintiff, and intimate with him, and had enmity

towards one of the defendants; that this B. had proposed to a witness to assist the plaintiff in a certain other lawsuit against said defendant; that B. and plaintiff had voted against having a school in this school-house; that plaintiff knew that A. would probably be employed as a teacher, and further, that said A. had been employed, and commenced teaching four days before the house was burned; that plaintiff had, for some years past, associated with B. and two other persons, and had but little communication with the defendants; and that on the next day after the burning, the plaintiff and B. were seen talking together in a hollow near the road, a short distance from the plaintiff's home; and thereupon the defendants offered to prove that B. had proposed to a witness to go to the house of A., and steal chickens, take them to the school-house, have a feast, and then burn up chickens and feathers, together with the house, which testimony was excluded from the jury; *Held*, That the evidence was properly rejected.

Where in an action for libel, the defendants asked the court to instruct the jury as follows: "That they need not be satisfied, beyond a reasonable doubt, as to the matters of their defence, but it is only necessary that they should be satisfied from the evidence, and all the circumstances of the case before them, of the truth of the matters alleged in defence," which instruction the court refused to give; *Held*, That the instruction was properly refused.

If a defendant in an action for libel, imputes a crime, and justifies in his defence, he must, in order to sustain his plea, adduce such evidence as would be required to convict the plaintiff, if on his trial for the crime imputed to him.

Section 1810 of the Code, which provides, that in applications for new trials, the affidavits of jurors may be taken and used in relation to such applications, was not designed to compel jurors, by rule, to answer under oath as to how, or in what manner, they made up their verdict.

Where after verdict for the plaintiff, in an action for libel, the attorney for the defendant filed his professional statement, alleging that the jurors agreed to make up their verdict by marking each a certain sum, and dividing the aggregate by twelve, and that some of the jurors admitted these things, but refused to give a statement or affidavit as to the manner in which they made up their verdict, upon which statement the attorney moved for a rule on said jurors, to answer as to the truth of said matters, which motion was overruled; *Held*, That the motion was properly overruled.

Section 2772 of the Code, which provides, that in all indictments or prosecutions for libel, the jury, after having received the direction of the court, shall have the right to determine, at their discretion, the law and the fact, refers to criminal prosecutions, or trials upon indictments, and not to a civil proceeding to recover damages.

The word *direction*, in section 2772 of the Code, means instruction.

*Appeal from the Davis District Court.*

THIS action was brought to recover of Abrams and thirty-

two others, damages for writing and publishing certain libelous matter of and concerning the plaintiff. The petition contains three counts, and charges the defendants with having written and published certain letters and notices, accusing plaintiff of the crime of arson, in burning a certain school-house. The defendants answer, denying the charge contained in the petition; in substance, they plead "not guilty." On the trial, several exceptions to the rulings of the court were taken by the defendants, which, as far as material, will be found referred to in the opinion of the court. All of the defendants, but one, were found guilty. Motions in arrest, and for a new trial, overruled. Judgment on the verdict, and defendants appeal.

*C. C. Nourse and Jones*, for the appellants.

*Palmer & Trimble* and *Knapp & Caldwell*, for the appellee.

WRIGHT, C. J.—The defendants first assign for error, the overruling of their demurrer to plaintiff's petition. The record shows, that the cause coming on to be heard, on defendants' demur er to the plaintiff's petition, the same was overruled; but we find no demurrer, or further reference to it, in any part of the transcript. What were the grounds of the demurrer, we have no means of knowing, and cannot, therefore, say that it was improperly overruled.

The next assignment of error, relates to the refusal of the court to grant some of the defendants a separate trial. It appears that some of the defendants, filed their affidavit, setting forth that certain of the other defendants were material and necessary witnesses for them; that they could prove matters material to their defence by said co-defendants, which could not be proved by any other witnesses; and that justice required that they should have separate trials. A motion, based upon this affidavit, was overruled, on the ground that said co-defendants would not be competent witnesses on the trial of the others. The bill of exceptions proceeds to state, that " the court did not hold in its discretion, that justice would

not be promoted by a separate trial, but refused the motion on the ground above named." The defendants now claim, that the court erred in not granting separate trials, without reference to the question of the competency of those not on trial, as witnesses.

As to this, it is sufficient to say; *first*, that no such question was made to the court, but the claim for separate trials was based alone upon the necessity of using the other defendants as witnesses. In the *second* place, we see nothing to satisfy us, that the discretion reposed in the court below, has been abused. Under the Code, such separation may be allowed by the court, " whenever in its opinion justice will be thereby promoted." Where such motion is granted, or refused by the court, in the exercise of its discretion, we should require a very strong showing indeed, before we should hold it to have been improperly exercised. In this case, the defendants are charged with having written, signed, and published, certain scandalous and defamatory matter of, and concerning the plaintiff. To sustain the petition, a certain paper or papers, are introduced, purporting to be signed by all of said defendants, in their own proper handwriting. It would, therefore, appear to have been one act—a publication made by them, in carrying out a common purpose ; and we can scarcely conceive any good object that could be accomplished in taking up the time of the court in having separate trials; unless, indeed, those not on trial, would have been competent witnesses for those on trial—and this question we now proceed to examine. We do not think, under such circumstances, that they would have been competent.

After the testimony of the plaintiff was closed, if no evidence had been offered, showing the guilt of one, or any number, of said defendants, they might, on motion, have had a verdict in their favor, and then have been introduced for their co-defendants. But so long as they remain parties to the record, and liable for costs, and any judgment that might be rendered, they are incompetent. By having separate trials, the liability of each for any judgment that might be rendered, is not changed. And especially is it so,

Forshee v. Abrams et al.

in a case of this kind, where it is charged that the defend-
ants were actuated by a common intent to injure the plain-
tiff. If all are guilty, it is proper to so charge them. If it
shall turn out that a portion are innocent, then let them be
discharged, and be sworn as witnesses.

And the argument that the plaintiff made all these per-
sons defendants, to prevent them from being witnesses, loses
its force under this rule; and if, by the operation of such a
rule, they are excluded, it is but the result of their own
wrongful act, and they have no ground, either legally or
equitably, to complain. This conclusion, we think, is abun-
dantly sustained by authority, as well as reason. Indeed,
the rule is so well settled, that it is now but seldom contro-
verted. In this case, the defendants were all served—all
joined in the answer—as to none of them, had the cause
been determined, either by default or verdict after trial; and
under such circumstances, we are aware of no case that will
justify the doctrine urged by appellants. On this subject,
see *Bent* v. *Baker*, 3 T. R. 27, reported in 2 Smith's Leading
Cases, 39; and particularly page 88 of the notes by the
American editors. Also, *Sawyer* v. *Merrill*, 10 Pick. 16;
*Commonwealth* v. *Marsh*, Ib. 57; *Van Deusen* v. *Van Slyck*,
15 Johns. 223; *Moore* v. *Eldred*, 3 Hill, 104, and the note;
1 Phillipps' Evid. 57; 3 Ib. 55, 61; 1 Greenl. Ev. §§ 329,
347, 358.

The cases cited by appellants, establish no contrary rule.
In *Stockham* v. *Jones et al.*, 10 Johns. 21, one of the defend-
ants was not served, nor did he appear, or plead. Under such
circumstances, he was held competent for those who were
served. In *Gould* v. *Janus*, 6 Cowen, 369, the witnesses of-
fered were not sued, nor in any manner parties to the record.
They were objected to as being trespassers, like the defend-
ants, on the *locus in quo*, and were admitted, for the reason
that the verdict could not be evidence for or against them.
The case referred to in 1 Phillipps' Ev. 119, was where two
actions had been brought against two persons for the same
assault, and it was held that in the action against one, the

other may be a witness, because he is not interested in the event. In *Morris* v. *Daubigny*, 16 Eng. Com. Law, all that is decided is, that in trespass, a person who commits the trespass, but is *not sued*, is a competent witness for the plaintiff, against his co-trespasser, without being released by the plaintiff. This, and all the cases just named, present quite a different question from the one now before us. The distinction, we think, is easily perceived.

It further appears, that the defendants, after proving by a witness, that the general character of the plaintiff was bad, and that he was reputed to be a " slanderer," proposed to prove that said plaintiff had been " guilty of speaking slanderous words of *others*, in fact, which the witness heard," which was objected to, and the objection sustained. This testimony was clearly inadmissible. Its object is not perceived, nor has any legitimate one been pointed out in the argument. It was not even proposed to prove that plaintiff slandered the *defendants*, but that he slandered *others*. And without speaking of the many objections to this testimony, another controlling one is, that the effect of the testimony was to prove individual or *particular* acts, instead of general character. This is not permissible.

It is next objected, that the court erred in excluding the testimony of one French. This witness being called by the defendants, stated that plaintiff's general character, in the neighborhood where he resided, was bad; and defendants then offered to prove by the witness, that plaintiff was generally reputed a *malicious* man, which being objected to, was excluded. This testimony is claimed to have been admissible, as tending to show that plaintiff was guilty of the arson said to be charged in the libel. Without determining that it would be admissible for any such purpose, under a *proper* state of pleadings, it is sufficient to say, that no plea of justification appears in the record, nor is there anything to show that such an issue was made. The only plea, already stated, is in denial of the libel charged in the petition. If even admissible under a plea of justification (which we by no means admit), it certainly cannot be, under the issue

here made. Such evidence in no manner tends to establish the fact that the libel was not published, nor to show that plaintiff's damages should, for that reason, be less. The proof of general bad character was properly received, but it was improper to receive proof of a particular fault or disposition, or particular traits of character.

It also appears by the bill of exceptions, that a short time previous to the burning of the school-house, referred to in the libel, it was *attempted* to be burnt; and that about this time, as another witness testifies, he passed the house late at night, saw a great light therein, and heard persons talking inside, but who they were he does not state, nor is it otherwise shown. By another witness it was proved, that one Bennett was a near neighbor of plaintiff, and intimate with him, and had enmity toward one of the defendants; and that this Bennett had proposed to witness to assist plaintiff in a certain other lawsuit against said defendant. And it further appeared, that said Bennett and plaintiff had voted against having a school in this school-house; that plaintiff knew that Abrams (one of the defendants) would probably be employed as a teacher; that said Abrams had been employed, and commenced teaching four days before the house was burnt; that plaintiff had for some years past associated with Bennett and two other persons, and had but little communication with the defendants; and finally, that on the next day after the burning, plaintiff and Bennett were seen " talking together in a hollow near the road, a short distance from plaintiff's house." And thereupon defendants offered to prove, that Bennett had proposed to witness to go to the house of Abrams and steal chickens, take them to the school-house, have a feast, and then burn up chickens and feathers, together with the house, which testimony being objected to, was excluded, and this is the next error assigned.

We think the testimony was properly rejected. Taking all the preceding circumstances together, they amount to this : that Bennett and plaintiff were intimate, and acted together in an unfortunate difficulty which had arisen in the school district, and that Bennett favored plaintiff's cause

in a certain other law suit. That they, or either of them, were near the school-house at the time of the burning or attempt to burn—or that they ever said a word together on the subject—is not shown, nor can it be fairly claimed, from all the circumstances. They talked together near the road, on the next day, it is true, but about what? It appears to us it would be manifestly unjust, under such circumstances, to hold plaintiff liable, or prejudice his case, by proving what Bennett said. If there was a plea of justification, this testimony would be inadmissible to maintain it. And if it is claimed, that while it might not show guilt, it at least might tend to excuse and extenuate the act of the defendants, and thus go in mitigation of damages, one, and perhaps a sufficient, answer to such an argument, is, that there is nothing to show that defendants knew of this conversation, at the time of the publication of the libel, or that they were in any manner influenced by it. Based, as the appellant's argument on this point is, upon the ground that the circumstances proved or established a combination or conspiracy between the plaintiff and Bennett, to burn the school-house, it is sufficient to say, that we do not think they prove any such common purpose or combination. This foundation must first be laid—it must have been proved that these individuals were connected in the unlawful enterprise charged—and that the alleged declarations of Bennett, were made during the pendency of the criminal enterprise. Greenleaf's Ev. § 111. When these declarations were made by Bennett, is not shown, to say nothing of the absence of proof as to the combination.

The defendants asked the court to instruct the jury, " that they need not be satisfied beyond a reasonable doubt, as to the matters of their defence; but it is only necessary that they should be satisfied from the evidence and all the circumstances of the case before them, of the truth of the matters so alleged in defence." This instruction was refused, and defendants excepted. We may say, in the first place, that we cannot see to what part of the defence this instruction was applicable. It would seem to point to a plea of

justification. If so (and this has been assumed in the argument), then it was properly refused; because there was no such issue made by the pleadings. But aside from this objection to the instruction, we think it improper, even granting there was a plea in justification. We understand the rule to be, that if a defendant imputes a crime, and justifies in his defence, he must, in order to sustain his plea, adduce such evidence as would be required to convict the plaintiff, if on his trial for the crime imputed to him. This was substantially so decided, in *Bradley* v. *Kennedy*, 2 G. Greene, 231; and is fully recognized as the rule by the books. 2 Greenleaf's Ev. §§ 426, 408; *Hopkins* v. *Smith*, 3 Barb. S. C. 599; *Woodbeck* v. *Keller*, 6 Cowen, 118.

After the verdict was rendered, the attorney for defendants filed his professional statement, alleging that said jurors agreed to make up their verdict by marking each a certain sum, and dividing the aggregate by twelve; and that some of the jurors admitted these things, but refused to give any statement or affidavit, as to the manner in which they made up their verdict. Thereupon, counsel moved for a rule on said jurors, to answer as to the truth of said matters, which motion was overruled, and this is now assigned for error. Our Code provides that the affidavits of jurors may be taken, and used in relation to applications for new trials, § 1810. This is an innovation upon the common law rule, and we are not disposed to extend it beyond what is fairly justified by the language used. It only permits that to be done, which, under no circumstances, was previously allowed. If jurors voluntarily give such affidavits, they may be used; but it was not designed to compel them, by rule, to answer under oath as to how, or in what manner, they made up their verdict. To allow such a practice, would be to invade and interfere with the rights of jurors, and the discharge of their duties in the jury-room, to an extent never contemplated by our Code. If there has been fraud or unfair dealing on their part, of course, they are not beyond reach of judicial inquiry; but upon a mere allegation of their having

acted improperly, they should not be compelled to disclose how they made up their verdict.

It is further claimed, that the jury in this case, were the judges of both the law and the fact, and, therefore, it was error to give them any instructions. The Code provides, that in all indictments or provocations for libel, the jury, after having received the direction of the court, shall have the right to determine, at their discretion, the law and the fact. Section 2772.

This objection cannot avail defendants, for the following reasons: First, no objection was made, at the time, to the court's instructing the jury, and it is now too late to make it. Second, the section quoted, expressly gives the court the right to give directions to the jury, which we construe to mean, what are commonly termed instructions. And in the third place, we understand this section to refer to criminal prosecutions, or trials upon indictment, and not to a civil proceeding to recover damages.

Other errors are assigned, but as they are all substantially passed upon, in what has already been said, and have not been urged in argument, we need not further extend this opinion. We see nothing to justify us in disturbing this judgment, and it is, therefore, affirmed.