### WRIGHT v. THE ILLINOIS AND MISSISSIPPI TELEGRAPH COMPANY.

1. New trial: AFFIDAVITS OF JURORS. Affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which *does not* essentially inhere in the verdict itself; as, that a juror was improperly approached by a party, his agent or attorney; that witnesses or others conversed as to the facts or the merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average, or by lot, or game of chance, or other artifice or improper *manner*. But such affidavits may not be received to show any matter which *does* essentially inhere in the verdict, as that the juror did not assent to it; that he misunderstood the instructions of the court, the statement of the witnesses, or the pleadings in the case; that he was unduly influenced by the state-

ments (or otherwise) of his fellow jurors; or mistaken in his calculation or judgment, or other matters resting alone in the juror's breast.

1. **Measure of damages: CARELESSNESS.** The plaintiff, in an action for damages resulting from a casualty caused by the defendant, is entitled to recover if he could not have prevented the injury by the exercise of ordinary care and diligence; but he cannot recover for any enhancement of damages caused by his own want of care.

*Appeal from Pottawattamie District Court.*

SATURDAY, APRIL 7.

THE plaintiff was the owner of ten horses and six mules which he was taking from central Iowa to Omaha, N. T., to market. On the night of the first day of August, 1863, at about eleven o'clock, he entered the city of Council Bluffs, and was proceeding down a street called Broadway, with a young man riding one of the horses and leading seven of the others by his side; the six mules were loose and following just behind the horses that were being led, and the plaintiff, a few steps in the rear, was driving one of his horses before a buggy in which he was riding, and was leading another tied by the halter to the hind axle. The defendant was the owner of, and operating a line of telegraph across the State of Iowa, through Council Bluffs, and down said street, crossing the same at a point specified, at which point one of the telegraph poles had fallen, thereby letting the wire down near to the ground.

The horses in the advance became first entangled in the wire, and immediately afterwards, the one plaintiff was driving, and then the one he was leading hitched to the buggy; the two latter were seriously cut and wounded by the wire, and becoming frightened ran off with the others, throwing plaintiff out of the buggy, bruising him considerably, seriously breaking the buggy, and further injuring themselves. The telegraph pole was standing at dark, and its fall was not known to any person (so far as the evidence

shows), prior to the accident; and the line was used until between half-past ten and eleven o'clock of that night, and up to the time the operator left the office. The telegraph line had been hurriedly constructed, under a necessity for early government use, in November and December, 1861, and cottonwood poles, the only available material therefor in that section had been used, and the fallen pole was broken off near to the ground, and appeared as if decayed entirely through.

This suit is brought by the plaintiff to recover damages for the injury sustained by him on account of the casualties aforesaid. The cause was tried to a jury, and resulted in a verdict for three hundred and forty-five dollars and sixty-six cents for the plaintiff. The defendant moved for a new trial, based mainly upon alleged erroneous giving and refusing instructions, misconduct of the jury, and newly discovered evidence. In support of the alleged misconduct of the jury, the defendant filed the affidavits of four of the jurors who tried the cause. Each affidavit stated, in substance, that, in order to arrive at the plaintiff's damages, it was agreed that each juror should mark down such sum as he thought proper to allow; that the aggregate should be divided by twelve, and the quotient should be the verdict; which agreement was carried out by each juror, and the quotient thus obtained was returned to the court as the verdict of the jury.

The plaintiff then moved to strike the affidavits of the jurors from the files, because they could not be read as evidence in support of the motion for a new trial. This motion to strike was sustained and the motion for a new trial overruled. Defendant excepted and appeals.

*C. Baldwin* for the appellant.

*Clinton & Sapp* for the appellee.

COLE J.—I. The first question presented by the transcript, and argued by counsel, is, whether affidavits of jurors may be read in support of a motion for a new trial, based upon the alleged misconduct of the jury, in the manner of arriving at their verdict.

*1. NEW TRIAL: affidavits of jurors.*

The Code of 1851 contained this provision: "1810. In applications for new trials, the affidavits of jurors or officers of the court may be taken and used in relation to such application." Whether this statutory provision was simply declarative of the common law rule, or was an innovation thereon, it was perhaps never fully and definitely determined by adjudication. Nor, is it material now to inquire; for, in the Revision of 1860, that section of the Code was entirely omitted, so that the question now rests solely upon the common law rule, whatever that may be. The counsel for appellant cites and relies upon three or four cases in 3d, 7th and 15th Iowa Reports, as fully sustaining his position, while the opposing counsel controvert the correctness of these decisions, under the common law, and insist that they were made under and based upon the provisions of the Code of 1851, and hence, not applicable.

We have felt called upon, therefore, to make a brief review of the adjudications of this court upon the various phases of this question.

In *Lloyd* v. *McClure*, 2 G. Greene, 139, which was an action upon an account, it was held that the affidavits of jurors could not be received to show what items they had allowed and what rejected, and that in making up their verdict, they did not allow certain credits which were indorsed upon the account sued on. The court (per KINNEY, J.), remark generally, that affidavits of jurors have sometimes been admitted in support of their verdict, but for no other purpose.

The case of *Abel* v. *Kennedy*, 3 G. Greene, 47, was one where the jury, as shown by the affidavit of the constable, retired to their room, and considered of their verdict. While there, eleven of their number agreed, but one was yet undecided. The court having adjourned, they were conducted to the court room for further deliberation, where they found part of a deposition taken to be read as evidence in the cause, but which had been excluded by the court. Some of the jurors read this deposition, but the undecided juror, who afterwards agreed with the eleven, did not read it. The court (per KINNEY, J.) held that it was not error to refuse to set aside the verdict upon these facts; and that the affidavits of the jurors could be considered to sustain the verdict, but not to impeach it. And it is further said, *arguendo*, that if the application had been made for a new trial, based alone upon the affidavits of any of the jurors, showing a misconduct in the jury, no matter how reprehensible and improper, the court should have refused a new trial. Citing *Vaise* v. *Deleval*, 1 Term R., 11; *Owen* v. *Warburton*, 1 New R., 326; and *Dana* v. *Tucker*, 4 Johns., 487.

In *Forshee* v. *Abrams et al.*, 2 Iowa, 571, there was a verdict for the plaintiff. The attorney for the defendant filed his professional statement, alleging that the jurors agreed to make up their verdict by marking each a certain sum and dividing the aggregate by twelve; that some of the jurors so admitted, but refused to give their statements or affidavits as to the manner in which they made up their verdict. Upon this statement, the counsel moved for a rule on the jurors to answer as to the truth of the matters stated, which the District Court refused, and that ruling was affirmed. This court (per WRIGHT, Ch. J.) say that the provisions of the Code of 1851, § 1810, that affidavits of jurors may be taken and used in relation to applications for new trial, is an innovation upon the common law rule,

and only permits that to be done which, under no circumstances, was previously allowed; and that the court was not disposed to extend the language beyond what was fairly justified by its use. That if there had been unfair dealing by the jury, it was not beyond the reach of judicial inquiry; but upon mere allegation of improper action the jury should not be compelled to disclose how they made up their verdict. No authorities on this point were cited.

After one motion for a new trial had been made and overruled, in *Cook, Sargent and Cook* v. *Sypher*, 3 Iowa, 484, another motion for a new trial was made, based upon the affidavit of one of the jurors who tried the case, to the effect that the verdict was not voluntary on his part. The District Court sustained the motion, and granted a new trial, which ruling was reversed in this court, the opinion being delivered by WRIGHT, Ch. J. The court *held*, that the provisions of the Code of 1851, § 1810, that in applications for new trials, the affidavits of jurors may be taken and used in relation thereto, was only designed to declare the law as more recently settled by the adjudications of the English, and most of the courts in this country; but it was not designed to introduce the dangerous practice of allowing jurors to impeach their own verdicts to the extent attempted in that case. That the settled rule, independent of the Code, was, that such affidavits may be received in *support* of the verdict, or for the purpose of enforcing it, but not to *impeach* it. The case of *Lloyd* v. *McClure*, *supra*, is cited, and also the authorities cited in *Abel* v. *Kennedy*, *supra*, and the following additional cases: *Willing* v. *Sevasey*, 1 Browne (Pa.), 123; *The People* v. *Columbia Common Pleas*, 1 Wend., 297; *Basley* v. *Chesapeake Ins. Co.*, 3 Gill. and John., 473; *Bladen* v. *Cockey*, 1 Har. and McHen, 230; and also 1 Gra. and Wat. on New Trials, 111 to 116.

In *Grady* v. *The State*, 4 Iowa, 461, the plaintiff in error

was convicted of a misdemeanor, and moved for a new trial, based upon the affidavit of his attorney, that one of the jurors had stated that the jury had disregarded the instructions because they were not bound by them, &c., &c., and that the juror refused to make an affidavit. On this affidavit he moved for a rule to require the juror to make affidavit of the facts; but both motions were overruled. This ruling was affirmed in this court and the opinion was delivered by WOODWARD, J.: "We do not say that a juror's declaration cannot be received in any case, but think they cannot, to prove the matter in the present instance. By section 1810 of the Code, the affidavits of jurors may be received on applications for new trials. But they cannot be compelled to make them, and it is not clear that they could be received to impeach their verdict." To the same effect is *Crumley* v. *Adkins*, 12 Iowa, 363.

The case of *Manix* v. *Maloney*, 7 Iowa, 81, was an action for an assault and battery, and it appeared alone by the affidavits of two of the jurors who tried the case, that in order to ascertain the amount of damages the jury agreed that each jury should set down such sum as he thought fit, and divide the aggregate by twelve, and the quotient should be their verdict; which agreement was carried out and the verdict so returned. These facts were made the basis of a motion for a new trial, which was overruled by the court below, and on appeal to this court, that ruling was reversed. This court (per STOCKTON, J.) *held*, that such facts would avoid the verdict, and that the affidavits of jurors were inadmissible to show that the verdict was so arrived at. The court then say that "the effect to be given to the affidavit of the juror is a different question. It may be admissible to show the misconduct of the jury in the manner of making up their verdict, when it would not be allowed for the purpose of impeaching their verdict,

by showing that the juror did not assent to it." The Court refer to the Code of 1851, § 1810; *Forshee* v. *Abrams,* and *Cook, Sargent & Cook* v. *Sypher, supra,* and cite *Smith* v. *Cheatham,* 3 Caines, 57, and 1 Gra. and Wat. on New Trials, ch. 8, § 12.

In *Ruble* v. *McDonald,* 7 Iowa, 90, the court (per WRIGHT, Ch. J.) held directly, that the affidavit of jurors, showing that the verdict was arrived at by drawing lots or balloting, the jurors being pledged in advance to be bound by the result, were competent evidence of the facts, and that such facts avoided the verdict. The opinion is based on *Manix* v. *Maloney,* and Gra. & Wat. on New Trials, *supra.*

The same question arose in *Schanler* v. *Porter et al.,* 7 Iowa, 482, and this court *held* (per WOODWARD, J.), that the affidavits of jurors were admissible to show that the verdict was arrived at by each juror setting down the sum he thought fit, and dividing the aggregate by twelve, and accepting the quotient, by previous agreement, as their verdict; and that a verdict so obtained was not a good verdict. Citing *Forshee* v. *Abrams et al., Cook, Sargent & Cook* v. *Sypher,* and *Manix* v. *Maloney, supra.*

The report of the case of *Butt* v. *Tuthill,* 10 Iowa, 585, is very meagre; but the opinion (by WOODWARD, J.), says, that "affidavits of jurors may be received to show the basis upon which the verdict was found. *Aliter,* where such affidavits impeach the verdict." This is all that appears in the case upon that point. See also *Turner* v. *Kelley,* 10 Iowa, 573, as to misapprehension by part of the jurors.

In *Stewart* v. *Burlington and Missouri River Railroad Company,* 11 Iowa, 62, the jury took with them to their room and read there, the deposition of a witness, taken by the plaintiff, in whose favor they returned a verdict. This fact was shown to the court alone by the affidavit of four

of the jurors. The admissibility of these affidavits was the decisive question in the case, and it was held by the court (per BALDWIN, J.), that they were admissible. And it is said that while it is well settled that "such affidavits may not be received by the court, for the purpose of impeaching their verdict, yet under the provisions of the Code, § 1810, such affidavits may be considered as showing any misconduct upon the part of the jury, in the finding of their verdict, and it has been so held by this court in *Forshee* v. *Abrams et al.; Manix* v. *Maloney,* and *Ruble* v. *McDonald, supra,* and the ruling of the District Court refusing to set aside the verdict, was reversed.

The opinion in the case of *The State* v. *Accola,* 11 Iowa, 246, was delivered by WRIGHT, J., but does not show the precise point made. It was as follows: "Defendant was convicted for violating section 2721 of the Code, and moved for a new trial upon the ground that the jurors, as shown by the affidavit of two of them, had, during their retirement, read the notes of testimony as taken by one of the attorneys on the trial. Upon the authority of *Abel* v. *Kennedy,* 3 G. Greene, 47; *Shields* v. *Gaffey,* 9 Iowa, 322; *Langworthy* v. *Myers et al.,* 4 Id., 18, the motion was properly overruled, and see 1 Gra. and Wat. on New Trials, 79, 80, and 3 Id., 1261. Judgment affirmed."

In *Shepherd* v. *Brenton,* 15 Iowa, 84, there was no critical examination of the question, but in the opinion of the court (per WRIGHT, J.), some of the authorities mentioned, *supra,* were cited, and it is said that if it had been determined by the District Court, that the affidavits of the jurors showing that they never consented to the verdict, were admissible and sufficient to impeach the same, such ruling would be reversed.

In the case of *Davenport* v. *Cummings,* 15 Iowa, 219, the affidavits of jurors showing how they construed a certain instruction, and which construction was clearly against the

legal rule in the case, were read without objection.   The District Court, rendered judgment on the verdict, which was affirmed by this court.   It is said in the opinion (per WRIGHT, J.), that " without passing upon the question, we remark, that to receive such affidavits would seem to us dangerous in policy, and unwarranted upon principle." To the same effect are *Jack* v. *Naber*, 15 Iowa, 450 ;   and *Moffet* v. *Rogers*, 15 Id., 453.

In *Barton* v. *Holmes*, 16 Iowa, 252, the affidavit of the juror, who was foreman, identified a paper used " in footing up and ascertaining what the average amount of the verdict in said cause would amount to, in case it was adopted."   The motion for new trial, based on this affidavit, was overruled, and that ruling was affirmed in this court, the opinion being delivered by the writer of this.   There was no question made as to the admissibility of the affidavit, and hence that question was not passed upon ; but it was said that " the rule is well settled, that whenever the jurors agree in advance to be bound by the result, and make up their verdict by each juror marking a sum on a piece of paper, or stating it, and the twelve sums thus marked or stated, being added together and divided by twelve, the quotient is taken as the verdict, such finding is bad and will be set aside by the court."   But it was held that the impropriety or illegality consisted in the agreement to be bound by the result, which agreement was not only not shown in that case, but was clearly negatived by the affidavit itself. Citing *Dana* v. *Tucker*, 4 Johns., 487 ; *Harvey* v. *Jones*, 3 Humph., 157 ; *Dunn* v. *Hall*, 8 Blackf., 32 ; *Dorr* v. *Fenno*, 12 Pick., 521 ; *Ellege* v. *Todd*, 1 Humph., 43 ; *Copperthwaite* v. *Jones*, 2 Dall., 55 ; *Chandler* v. *Barker*, 2 Har., 387 ; *Grinnell* v. *Phillipps*, 1 Mass., 530 ; *Shobe* v. *Bell*, 1 Randolph, 39 ; see, also, *Conklin* v. *Hill*, 2 How. Pr., 6.

This completes the review of substantially all the cases

decided by this court involving the question of the admissibility and effect of affidavits of jurors in sustaining or avoiding their verdict. And while it may be admitted that the cases are not, beyond cavil, wholly and entirely consistent with each other, yet they are not so essentially and necessarily in conflict, as to require us to consider any of them as overruled cases.

This want of entire or perfect consistency in our own court, naturally stimulates an inquiry as to the course pursued by other courts upon the same question. A brief review of them, in view of the importance and frequent recurrence of the question, seems a plain duty, and therefrom we will find that there is a clear and decided conflict of decisions, not only in the courts of our sister States, but in the English courts also.

In *Par* v. *Seames*, 1 Beames (Eng. 4 to 8 ed., Geo. II), 320, judgment was stayed and further time given, on a motion for a new trial, to allow an opportunity to present the affidavits of jurors as to the manner of making up the verdict.

In *Phillips* v. *Fowler*, Beames (Eng.), 441; *S. C.*, Comyn, 525, upon an affidavit of two of the jurors that the verdict was obtained by casting lots, the court set it aside.

It was shown in *Aylett* v. *Jewel*, 2 W. Black. (Eng.), 1299, by the affidavit of defendant's attorney, that some of the jury had confessed to him that, not being able to agree on their verdict, all the names were written on separate papers, and shook together in a hat, and it was agreed that a majority of the six names first drawn should decide the verdict, and it was so done; but the court refused to interfere, because there was no affidavit by the jurors, but only hearsay evidence. See also, to same effect, *Clark* v. *Stevenson*, 2 W. Black., 803; *Mellish* v. *Arnold*, Bunbury, 51; *Straker* v. *Graham*, 4 M. & W., 721; *S. C.*, 7 Dowl. P. C.,

223; *Burgess* v. *Langley*, 5 M. & G., 722. But see, *contra*, *Addison* v. *Williamson*, 5 Jur. (Exch.), 466.

In *Rex* v. *Simmons*, Sayre, 35; *S. C.*, Wils., 329; the jury were directed to inquire as to two matters — the *act* and the *intent*, but unless they found the defendant guilty of both, they should acquit. On the coming in of the jury, who only had found the defendant guilty of the act, the judge understood them to declare their verdict to be guilty, although one of the jurors said at the time, "No intent; no intent." There was much noise in the court room at the time. The affidavits of jurors were afterwards received, in explanation of the whole matter, and thereon the verdict was set aside upon the ground that it was contrary to the directions of the judge in a matter of law. See, also, *Sargent* v. *Deniston*, 5 Cow., 106; and *Ex parte Caykendall*, 6 Id., 53.

There were two different issues in *Cogan* v. *Ebden*, 1 Burr., 383, and the jury agreed to find for plaintiff on one issue, and for defendant on the other; but the foreman gave a general verdict for defendant. The mistake was discovered by the jurors about an hour afterwards, but not till after the judge had gone to his lodgings. The affidavits of eight of them were received as a basis for a rule to show cause why the verdict should not be amended

In *King* v. *Woodfall*, 5 Burr., 2661, it was held that, when there is a doubt upon the judge's report, as to what passed at the time of bringing in the verdict, affidavits of jurors may be received upon a motion for a new trial; but an affidavit of a juror cannot be read, as to what he then thought or intended.

In *Smith* v. *Cheatham*, 3 Caines, 57, a majority of the court were of the opinion, that confessions of the jurors to the constable (as well as their affidavits), that the amount of the verdict was ascertained by each juror marking down and then dividing the aggregate by twelve, were

admissible to establish the fact. See the opinion of LIV-INGSTON, J., in full. KENT, Ch. J., denied their admissibility, and doubted whether the fact properly proved would avoid the verdict.

The question submitted to the jury in *Jackson v. Dickenson & Thompson*, 15 Johns., 309, was as to usury in a certain mortgage, and they found by their verdict that there was usury in the note, but meaning another note than that connected with the mortgage. On returning their verdict, the court inquired of the jury if they intended to find that the usury in the note was connected with the mortgage? To which one of the jury replied that they did not intend to find so; but the judge did not hear this reply, and entered the verdict. The affidavits of the jurors were against objections, received to show these facts, and a new trial was granted thereon.

The verdict in *Warner* v. *Robinson*, 1 Root, 194, was obtained by marking down and dividing the aggregate by twelve, and the court finding the facts to be proved by inquiry of the jurors, set aside the verdict.

In *Crawford* v. *The State*, 2 Yerger, 60, which was a capital case, a juror was not satisfied of the guilt of the prisoner, but assented to a verdict of guilty under an impression suggested by his fellow jurors, that the governor would pardon if the jury recommended him. Affidavits of jurors showing these facts were received, and a new trial granted on the ground of mistake. But see, *contra*, *The Commonwealth* v. *Drew*, 4 Mass., 391, and *Sutbrell* v. *Dry*, 1 Murphys (N. C.), 94.

It appeared in *Shobe* v. *Bell*, 1 Randolph, 39, by affidavits of four of the jurors, that after disagreement for a time, the jurors agreed to each mark down a sum and divide the aggregate by twelve, but did not agree to accept the quotient as their verdict, and although the verdict

approximated that quotient, and affidavits were received to show the facts, the court refused to set aside the verdict.

The case of *Cochran* v. *Street*, 1 Wash. (Va.), 79, was an action for slander, and the jury returned a verdict for plaintiff for £150. Judgment was rendered on the verdict, and a bill of injunction filed charging misbehavior of the jury. The depositions of the jurors were taken, and from them it appeared that four of the jury did not agree to the verdict, but did not dissent from it, because of their belief that a majority was to govern. The bill was sustained, and the verdict set aside, and a new trial granted.

In *Grinnell* v. *Phillips*, 1 Mass., 541, it appeared, on the examination of a juror in open court, that the verdict was the amount of the sums named by each divided by twelve, but that it was not agreed in advance to accept such quotient, and for this reason the verdict was sustained.

It was held in *Reynolds* v. *Champlain Transportation Company*, 9 How. Pr., 7, that affidavits of jurors were admissible to show improper conduct on the part of plaintiff, such as making remarks out of court in the juror's presence, and although no influence therefrom is shown, the verdict in his favor should be set aside.

In *Little* v. *Larrabee*, 2 Greenl., 34, the action was a writ of entry, and the court received the affidavits of jurors to show that they intended to find for the *tenant*, whereas, by mistake in the legal terms, they returned a verdict for *demandant*, and thereon set the verdict aside.

Affidavits of jurors were also received in the following cases: *Metcalfe* v. *Deane*, Cro. Eliz., 189; *Vicary* v. *Farthing*, Cro. Eliz., 411; *Heylor* v. *Hall*, Palm., 325; and said by WELLS, Ch. J., to be the settled rule in C. B., *Norman* v. *Beaumont*, Willes, 487; *Howard* v. *Cobb*, 3 Day, 310; *United States* v. *Fries*, 3 Dall., 517, and note; *Bradley's Lessees* v. *Bradley*, 4 Dall., 112; *Harding* v. *Hewlett*, 8 Dowl. P. C., 598; 4 Juris., 292; B. C., *Hindle* v. *Birch*, 1 Moore, 455;

*Ferrill* v. *Simpson*, 8 Pick., 859; *Milsam* v. *Hayward*, 9 Price, 134; *State* v. *Hascall*, 6 N. H., 352; *Tenny* v. *Evans*, 13 N. H., 462. That affidavits of jurors will not be received to show that the verdict was obtained by each juror marking down and dividing aggregate by twelve, or by lot, &c., was decided in the following cases: *Vaise* v. *Deleval*, 1 Term R., 11; *Owen* v. *Warburton*, 1 New R. (4 Bos. and Pul., 326); *Dana* v. *Tucker*, 4 Johns., 487.

That affidavits of jurors will not be received to show the detail of the deliberations of the jury, or that they or one or more of them misunderstood the evidence or instructions, &c., or did not agree to the verdict, &c., see *Robins* v. *Wendover*, 2 Tyler, 11; *Basly* v. *Chesapeake Insurance Company*, 3 Gill. & John., 473; *Willing* v. *Swasey*, 1 Browne (Pa.), 123; *Bladen* v. *Cockey*, 1 Har. & McH., 230; *Jackson* v. *Williams*, 2 Term R., 281; *People* v. *Barker*, 3 Wheeler Cr. Cases, 19; *Clum* v. *Smith*, 5 Hill, 560; *Green* v. *Bliss*, 12 How. Pr., 428; *Brownell* v. *McEwen*, 5 Denio, 367; *The People* v. *Columbia Common Pleas*, 1 Wend., 297; *Taylor* v. *Everett*, 2 How. Pr., 23; *Folsom* v. *Manchester*, 11 Cush., 334; *The State* v. *Freeman*, 5 Conn., 348; *Meade* v. *Smith*, 16 Id., 365; see, also, 1 Greenl. on Ev., § 252, and the note of learned reporter (in late edition), of the case of *Little* v. *Larrabee*, 2 Greenl., 41; *Murdock* v. *Sumner*, 22 Pick., 156; *Cook* v. *Castreer*, 9 Cush., 266–278.

It is very apparent from this review of the authorities, that each case has been decided, not on any recognized or fixed principle, but upon its own supposed merits, according to individual views of the judge delivering the opinion of the court deciding the case; and although previous cases are sometimes cited, the question seems very often to have been treated as one of first impression. Under such circumstances, it is, of course, impossible to deduce a general rule from, or state one that will be consistent with, all the cases. Indeed, in the midst of such conflict in the

adjudicated cases, no court would be justified in laying down, if possible, a rule based upon principle, and resting a case thereon, regardless of the former adjudications.

While we do not feel entirely confident of its correctness, nor state it without considerable hesitation, yet we are not without that assurance, which, under the circumstances, justifies us in laying down the following as the true rule: That affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict itself, as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others conversed as to the facts or merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average or by lot, or game of chance or other artifice or improper manner; but that such affidavit to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict; that he misunderstood the instructions of the court; the statements of the witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast.

That the verdict was obtained by lot, for instance, is a fact independent of the verdict itself, and which is not necessarily involved in it. While every verdict necessarily involves the pleadings, the evidence, the instructions, the deliberation, conversations, debates and judgments of the jurors themselves; and the effect or influence of any of these upon the juror's mind, must rest in his own breast, and he is and ought to be concluded thereon by his solemn assent to and rendition of the verdict (*veredictum* — a true declaration). To allow a juror to make affidavit

against the conclusiveness of the verdict by reason of and as to the effect and influence of any of these matters upon his mind, which in their very nature are, though untrue, incapable of disproof, would be practically to open the jury room to the importunities and appliances of parties and their attorneys, and, of course, thereby to unsettle verdicts and destroy their sanctity and conclusiveness.

But to receive the affidavit of a juror as to the independent fact that the verdict was obtained by lot, or game of chance or the like, is to receive his testimony as to a fact, which, if not true, can be readily and certainly disproved by his fellow jurors; and to hear such proof would have a tendency to diminish such practices and to purify the jury room, by rendering such improprieties capable and probable of exposure, and consequently deterring jurors from resorting to them. The ground upon which affidavits of jurors were excluded in the case of *Vaise* v. *Deleval, supra* (which is the leading case and contrary to prior decisions), is not more than satisfactory. Lord MANSFIELD said: "The court cannot receive such an affidavit from any of the jurymen themselves, in all of whom such conduct is a high misdemeanor; but in every such case the court must derive their knowledge from some other source; such as from some person having seen the transaction through a window or by some such other means."

While it is certainly illegal and reprehensible in a juror, to resort to lot or the like to determine a verdict, which ought always to be the result of a deliberate judgment, yet such resort might not evince more turpitude tending to the discredit of his statement than would be evinced by a person not of the jury, in the espionage indicated by Lord MANSFIELD and necessary to gain a knowledge of the facts to enable him to make the affidavit. At all events the superior opportunities of knowledge and less

liability to mistake, which the juror has over the spy, would entitle his statement to the most credit. And if, as is universally conceded, it is the *fact* of improper practice which avoids the verdict, there is no reason why a court should close its ears to the evidence of it from one class of persons, while it will hear it from another class, which stands in no more enviable light and *is* certainly no more entitled to credit.

Nor does the consideration of the affidavits of jurors for the purposes stated, contravene sound public policy. It is true, however, that public policy does require that when a juror has discharged his duty and rendered a verdict, such verdict should remain undisturbed and unaffected by any subsequent change of opinion upon any fact or pretext whatever; and, therefore, a juror should not be heard to contradict or impeach that which, in the legitimate discharge of his duty, he has solemnly asseverated. But when he has done an act entirely independent and outside of his duty and in violation of it and the law, there can be no sound public policy which should prevent a court from hearing the best evidence of which the matter is susceptible, in order to administer justice to the party whose rights have been prejudiced by such unlawful act. In other words, public policy protects a juror in the legitimate discharge of his duty, and sanctifies the result attained thereby; but if he steps aside from his duty, and does an unlawful act, he is a competent witness to prove such fact, and thereby prevent the sanction of the law from attaching to that which would otherwise be colorably lawful.

We are, therefore, of the opinion that the District Court erred in striking from the files and refusing to consider the affidavits of the four jurors, that the verdict was determined by each juror marking down such sum as he thought fit, and dividing the aggregate by twelve and taking the quotient as their verdict, pursuant to a previous agreement

to accept it as such. These affidavits, uncontradicted, are sufficient to sustain the motion to set aside the verdict and grant a new trial.

II. Another ground upon which the motion for new trial was based, was that of newly discovered evidence. It is shown by the affidavit of the newly discovered witness that, on the night of and before the accident to plaintiff, he saw five or six men partially intoxicated and cutting up along the street, take hold of and break down the telegraph pole and carry it across the street, and that the poles were standing and the wire up in good order prior to that time. Due diligence in seeking this testimony is conceded by the plaintiff's counsel. This testimony appears to be new and very material, but it becomes unnecessary to decide upon this point in this case, since a new trial must be granted upon the first, and the defendant can then avail himself of this testimony on the retrial.

III. At the request of the plaintiff the court instructed the jury, in varied phraseology, that the plaintiff was 2. MEASURE OF DAMA-GES: care-lessness. entitled to recover (upon the hypothesis stated) the damages he had suffered by the casualty, if the jury believed he could not, by the exercise of ordinary care and diligence, have prevented such damage. And on its own motion the court further instructed the jury that the burden of proof is upon the plaintiff to show; * * * that the injuries complained of did not result from any lack of ordinary care and diligence upon the part of plaintiff; but this proof need not be direct and positive; it may be inferred from the circumstances in the case which have been proved. And then it is added: "But if you should find, from the testimony, that the plaintiff, by the exercise of ordinary diligence and care, could not have prevented the injury, he would not be prevented from recovering in this action, notwithstanding he may have been guilty of negligence."

The general rule upon this subject seems to be, that where the plaintiff, by his own negligence or carelessness, has contributed to produce the casualty from which he has suffered damage, he shall not recover. This rule is based upon two considerations, first, that no person shall be permitted to take advantage of his own wrong; and second, the supposed inability of a court of law to apportion the damages, according to the respective faults of the parties. But this general rule has been, according to many authorities, so far invaded by way of exception, as to allow a plaintiff to recover, although he may not have been faultless, provided his carelessness or negligence was not the proximate cause of the occurrence producing the injury.

" If (in the language of the instruction) the plaintiff, by the exercise of ordinary care and diligence, could not have prevented the injury," it would seem necessarily to follow that his carelessness or negligence was not the proximate cause of it, and, therefore, he would not, according to the exception above stated, be prevented from recovery. But, although not prevented from recovering, he would not be entitled to recover for any enhancement of his damages by reason of his own want of care. To illustrate by this case, suppose that it was careless and negligent for the plaintiff to take so many horses and mules with only one assistant (as the proof tends to show), when he should have had three, and that the eight horses, led by the one man, would have run against and become entangled in the wire, if led by two men; yet, if by reason of having but the one man to manage them, after they became thus entangled, the horses suffered more injury and damage than they would if there had been two men to the eight horses, the plaintiff ought not to recover for such excess of damage. This principle of limit or qualification to the measure of damages, does not seem to have been plainly and fairly put to the jury. And, even if the

instructions were otherwise correct, they were defective in this particular. See, further, the very equitable rule, as laid down in *Scott* v. *Dublin and Wicklow Railway Company*, 11 Ir. Com. Law R., 377, quoted in *Donaldson* v. *Mississippi and Missouri Railroad Company*, 18 Iowa, 280.

Reversed.