# NEW YORK COMMON PLEAS.

Everitt Messenger and others agt. The Fourth National Bank.

*Affidavits of jurors will not be received to impeach their verdict — new trial — surprise.*

Affidavits of jurors will not be received to impeach their verdict.

If a plaintiff be taken by surprise, he should take a nonsuit, because if he proceeds with his case and seeks to take his chances for a verdict, he forfeits his right to a new trial on this ground.

With us the permission of the court is asked for to withdraw a juror, and to let the case stand over for a future day.

After discovered testimony, if material, is good ground for a new trial, but it must have been discovered after the trial.

*Special Term, March 19, 1875.*

Motion for a new trial.

*J. G. Lamberson and D. T. Welden*, for plaintiffs.

*Lee & Alvord and B. T. Kissam*, for defendants.

Daly, *C. J.* — The application for the new trial must be denied.

It is a general rule, which has been long and well settled, that the affidavits of jurors will not be received to impeach their verdict ( *Vaise* agt. *Delavan*, 1 *Term R.*, 11 ; *Owen* agt. *Washburton*, 1 *Bos. & P. N. C.*, 326 ; *Smith* agt. *Cheetham*, 3 *Cai.*, 57 ; *Willing* agt. *Swasey*, 3 *Gil. & Johns.*, 473 ; *Dana* agt. *Tucker*, 4 *Johns.*, 487 ; *People* agt. *Columbia Co. Com. Pleas*, 1 *Wend.*, 297 ; *Robbins* agt. *Wendover*, 2 *Tyler*, 11).

Messenger agt. Fourth National Bank.

The affidavit of a juror to impeach his verdict, say the court, in *Willing* agt. *Swasey* (*supra*), ought to be rejected, because its admission would open a door to tamper with jurymen after they had given their verdict; it ought to be rejected, because it might be the means in the hands of a dissatisfied juror, to destroy a verdict at any time, after he had assented to it; in fine, it ought to be rejected, because it would unsettle all the verdicts in the country.

This case is no exception to this well settled rule. If the juror was laboring under the infirmity of deafness, he would have been excused upon applying to the court when he was called to be impanneled; or if, after sitting in the case, he found that he was unable from his deafness to hear the testimony, he should have made known that fact, and the parties would no doubt have consented that he might withdraw, and that the case should go on before the rest. It would not be to the interest of either party that their rights should be disposed of by a juror who could not hear the testimony. It not unfrequently occurs that a juror states that he is unable from his deafness to hear the evidence, and that he withdraws with the consent of all parties. I never knew a case where it was refused. But to allow him, when without making any complaint he has sat through the whole cause, and given his assent to the verdict, to impeach it by an affidavit that he did not hear the testimony, or the charge of the judge, might lead to the very abuses pointed out in *Willing* agt. *Swasey* (*supra*), and which it was the object of this rule to prevent.

The other ground upon which a new trial is asked for, is, that the plaintiffs were taken by surprise by the testimony given by Rutherford, which they regard as inconsistent with the account of the transaction that had been given by Dana on the former trial. That he was taken by surprise not only by the unexpected testimony of Rutherford, but by the fact that Dana had been in the court attending as a witness, but was absent when Rutherford gave his testimony, and could not afterward be found to be examined by the plaintiffs,

having kept out of the way at the instance and request of Rutherford.

That Rutherford's account of what took place in his presence may very well have surprised the plaintiffs, as Rutherford was not called on the former trial; nor was the fact of his presence at the time testified to by Dana. It may also be conceded that if the jury had had before them what was sworn to by Dana on the former trial, or if the plaintiffs had been enabled to examine him upon this trial, that it may have had a material effect upon the verdict; for the whole case turned upon the point whether Arthurs had authorized Fries to indorse Arthurs' name upon the check. I am also satisfied, from the evidence before me, that Dana was kept out of the way, through the instrumentality of Rutherford. But it does not follow from all this that the court will grant a new trial.

The rule originally was, that if the plaintiff was taken by surprise, his only remedy was to submit to a nonsuit (*Harrison* agt. *Harrison*, 9 *Price*, 89). I have no doubt, said baron Wood, in the case cited, that the plaintiff was taken by surprise; but, he adds, he should have requested to be nonsuited, that he might have come better prepared in another action; but he chose, notwithstanding, to go on and take the chance of a verdict, by letting the case go to the jury, in the hope, perhaps, they would disbelieve the defendant's witnesses.

It would become a common course on all occasions of failure, if this were to be tolerated; for the plaintiff, instead of choosing to be nonsuited, as he ought to have done in this case, for that is the only proper course — to try first what the jury will do for him, and if he should fail he will then apply to the court for a new trial. It is impossible to listen to such an application.

A stronger reason exists in this country for refusing a new trial in cases of surprise, because the practice has been adopted with us, and has long been settled, that in cases of surprise the court may, upon the plaintiff's application, direct a juror to be withdrawn, and order the cause to stand over for trial

upon some future day (*The People* agt. *The N. Y. Com. Pleas*, 8 *Cow.*, 127; *United States* agt. *Coolidge*, 2 *Gallison*, 364; *The People* agt. *Ellis*, 15 *Wend.*, 371; *The People* agt. *Olcott*, 2 *Johns. Cases*, 301).

It was held in *Willard* agt. *Weathebe* (1 *New Hamp. Cases*, 118), that when a party is surprised at the trial by evidence upon a particular point, it is a good cause for a motion to delay the trial; but where no such motion was made, it is no ground for granting a new trial; and in *The People* agt. *Mowks* (10 *How. Pr. R.*, 623), it was held that, in cases of surprise, the plaintiff must apply to the court for leave to withdraw a juror, or else submit to a nonsuit; but that he cannot, after submitting his cause, and finding the verdict against him, ask the court to relieve him on the ground of surprise. In *The People* agt. *The N. Y. Com. Pleas* (*supra*), the surprise was the absence of a witness, who had been duly subpoenaed, and who, it was expected, would be present at the trial. Judge IRWIN allowed a juror to be withdrawn, and the court, after a careful consideration of the question, decided that he had that power. This is one of the grounds of surprise in the present case — the absence of the witness Dana, who it was expected would be present.

That the plaintiffs had no intention of examining Dana appears in the fact that they did not subpoena him. They were surprised by the testimony of Rutherford, who swore to a state of facts which, if true, established conclusively that Arthurs directed Fries to indorse his (Arthurs') name upon the check. If it then became of material importance to the plaintiffs to examine Dana as to what occurred, and if he could not be procured, the plaintiffs should have asked the court for leave to withdraw a juror. This was their remedy, and their only remedy. They did not deem it of sufficient importance to make such an application, preferring, probably, as baron WOOD said, to take their chance of a verdict, in the hope that the jury would believe Arthurs and disbelieve Rutherford and Fries.

VOL. XLVIII. 69

An early adjournment of the case was made after Ruther-ford's testimony, to enable the plaintiffs to procure Dana's testimony. They had until the opening of the court upon the next day to procure his attendance, but were unable to do so, and they neither applied to the court when they found that they could not obtain him, for leave to withdraw a juror, nor even offered to read the testimony which Dana had given upon the former trial to the jury, showing that they could not then have attached a great deal of importance to the incon-sistency between the respective statements of Dana and Rutherford, as they did not even offer to read Dana's testimony, having probably great confidence in the result before the jury, in which, as it has turned out, they were disappointed. They cannot now be relieved by having a new trial.

The plaintiffs rely on the case of *Wehlkampf* agt. *Willett* (1 *Daly*, 4); but that was a case in which the defendants dis-covered, after the trial, that the plaintiff, who was a witness on her behalf, swore to a fact, and a very material one, that she had money in a savings bank with which she bought the property, and sufficient to have loaned her husband for the amount which he had borrowed, which was a material circum-stance to strengthen her statement of her ability to purchase and pay for the property, and which was wholly false, it appearing by the testimony of an officer of the bank that she had no money at all in it at the time. It was discovered after the trial that this statement was false, and the plaintiffs had, in making it, been guilty of perjury. It is, therefore, very different from the present case, where the plaintiffs knew upon the trial the importance of Dana's evidence, if it were import-ant and had the remedy which the law gives them, to ask that a juror be withdrawn; and *Wehlkampf* agt. *Willett*, moreover, was the case of a defendant who can neither submit to a nonsuit nor claim the right to have a juror withdrawn, whose only remedy was the one he sought, to have the ver-dict set aside — upon discovery after the trial that a most material statement made by the plaintiff, as a witness on her

own behalf, was false and that he had committed perjury — a remedy which, in such a case, is always open to a defendant (*Margaret* agt. *Wilson*, 1 *Bos.*, 1 *Pul.*), for it is all that he has.

The motion for a new trial must, therefore, be denied.